SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-07-0384-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2004-037319 |
| DEREK DON CHAPPELL, | ) |
| | ) |
| Appellant. | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Robert L. Gottsfield, Judge

**AFFIRMED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
     By   Kent E. Cattani, Chief Counsel
          Criminal Appeals/Capital Litigation Section
          Lacey Alexandra Stover Gard,                     Tucson
          Assistant Attorney General
          Jeffrey A. Zick, Assistant Attorney General     Phoenix
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER             Phoenix
     By   Stephen R. Collins, Deputy Public Defender
          Spencer D. Heffel, Deputy Public Defender
Attorneys for Derek Don Chappell
_____

**P E L A N D E R**, Justice

¶1      Derek Don Chappell was convicted of first degree murder and child abuse and sentenced to death for the murder. We have jurisdiction over this automatic appeal under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 13-4031 and 13-4033(A)(1) (2010).

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2     Chappell began dating Kristal Shackleford in the fall of 2003.[1]  They soon were engaged to be married and Shackleford and her two-year-old son, Devon, moved in with Chappell and his parents.

¶3     On December 10, 2003, Chappell was caring for Devon at home while Shackleford was at work.  While changing Devon's diaper, Chappell forcefully pushed down on Devon's shoulders and neck until his face turned red.  Chappell immediately contacted Shackleford, said he had "hurt Devon," and asked her to come home right away.  A pediatrician examined Devon later that day and found bruising on his face and neck consistent with choking.

¶4     In statements to police after the incident, Chappell suggested that he was jealous of Devon's relationship with Shackleford.  A Child Protective Services (CPS) investigation ensued, and CPS told Chappell he was to have no further contact with Devon.

¶5     Shackleford and Devon moved out of the Chappell home and into a nearby apartment complex, but Chappell and Shackleford continued dating.  On March 6, 2004, they told friends they once again were engaged; however, Chappell was

---

[1]     We view the facts in the light most favorable to upholding the verdicts.  *State v. Garza*, 216 Ariz. 56, 61 n.1, 163 P.3d 1006, 1011 n.1 (2007).

2

becoming increasingly worried that CPS's restrictions would ultimately force Shackleford to choose between him and Devon. On March 10, Shackleford told Chappell that if she had to choose, she "could not live without her son."

**¶6** In the pre-dawn hours of March 11, Shackleford called 911 to report that Devon was missing. Police officers found Devon floating in the swimming pool at Shackelford's apartment complex. Devon was pronounced dead at a nearby hospital, and an autopsy revealed that the cause of death was drowning. Chappell quickly became a suspect and ultimately confessed to the murder. In interviews with police and in a press conference he held from jail a few days after his arrest, Chappell admitted drowning Devon but claimed he was acting at Shackleford's direction.[2]

**¶7** Chappell was indicted on charges of child abuse for the 2003 choking incident and first degree murder and was found guilty on both counts. During the aggravation phase of the trial, the jury found three aggravating circumstances: (1) a previous conviction of a serious offense (child abuse), A.R.S. § 13-751(F)(2) (2010);[3] (2) the murder was committed in an

---

[2]   Shackleford invoked her Fifth Amendment privilege against self-incrimination and refused to testify at Chappell's trial.

[3]   Arizona's capital sentencing statutes were reorganized and renumbered in 2008. 2008 Ariz. Sess. Laws, ch. 301, §§ 26, 38-41 (2d Reg. Sess.). Because the renumbered statutes are not materially different from the previous version, we cite the current version.

especially cruel manner, § 13-751(F)(6); and (3) Chappell was an adult and the victim was under fifteen years of age at the time of the murder, § 13-751(F)(9). After the penalty phase, the jury determined that Chappell should be sentenced to death.

## II. ISSUES ON APPEAL

### A. Guilt Phase

¶8 Chappell argues his statements about the murder should have been excluded because the State failed to establish corpus delicti. "We review a ruling on the sufficiency of the evidence of corpus delicti for abuse of discretion." *State v. Morris*, 215 Ariz. 324, 333 ¶ 33, 160 P.3d 203, 212 (2007). Because Chappell did not raise this argument or object to admission of his statements at trial, we review only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567-68 ¶¶ 19-20, 115 P.3d 601, 607-08 (2005).

¶9 "The corpus delicti doctrine ensures that a defendant's conviction is not based upon an uncorroborated confession or incriminating statement." *Morris*, 215 Ariz. at 333 ¶ 34, 160 P.3d at 212. Rather, the state must present sufficient evidence to permit a "reasonable inference" that the "alleged injury to the victim . . . was caused by criminal conduct rather than by suicide or accident." *Id.* (quoting *State v. Hall*, 204 Ariz. 442, 453 ¶ 43, 65 P.3d 90, 101 (2003)); *see also State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013

4

(1983).  Corpus delicti can be established through circumstantial evidence, *Morris*, 215 Ariz. at 333 ¶ 34, 160 P.3d at 212, or by independent corroboration of the defendant's statements, *Smith v. United States*, 348 U.S. 147, 156 (1954).

¶10      Unlike *State v. Nieves*, on which Chappell relies, this case does not involve "an inexplicable death" or a complete absence of any "direct or circumstantial corroborating evidence . . . to bolster the defendant's confession."  207 Ariz. 438, 443-44 ¶¶ 28-29, 87 P.3d 851, 856-57 (App. 2004).  Here, the State presented significant evidence to corroborate Chappell's statements:  Chappell was seen inspecting the swimming pool area at Shackleford's apartment complex a few days before Devon's death; a river rock, similar to rocks found near Chappell's parents' house, was used to prop open the pool gate; Shackleford routinely locked her apartment doors at night, making it unlikely that two-year-old Devon could have opened the door himself; at one time, Chappell had a key to Shackleford's apartment; and Devon's body was found in the pre-dawn hours in a pool located some distance from Shackleford's apartment.  This corroborating evidence makes it very unlikely Devon's death was an accident.  Therefore, we find no error, fundamental or otherwise, in the trial court's admission of Chappell's statements.

**B.    Aggravation Phase**

   **1.    Sufficiency of Evidence to Prove (F)(6) Aggravator**

¶11      Chappell argues that there was insufficient evidence to support the jury's finding that the drowning was especially cruel.  *See* A.R.S. § 13-751(F)(6).  "Cruelty involves the pain and distress visited upon the victim[] and may be found when the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur."  *State v. Martinez*, 218 Ariz. 421, 436 ¶ 70, 189 P.3d 348, 363 (2008) (citation and internal quotations omitted); *accord Morris*, 215 Ariz. at 338 ¶ 61, 341 ¶ 79, 160 P.3d at 217, 220; *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997).  "In reviewing a sufficiency of the evidence claim, [we review] the record to determine whether substantial evidence supports the jury's finding."  *State v. Roque*, 213 Ariz. 193, 218 ¶ 93, 141 P.3d 368, 393 (2006).  "Substantial evidence is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt."  *Id.* (citation and internal quotation omitted).

¶12      During the aggravation phase, the medical examiner, Dr. Hu, testified that Devon likely was conscious for thirty seconds to two minutes while being held underwater.  Dr. Hu would not opine whether a two-year-old under those circumstances

could understand that he was about to die, but testified that Devon certainly would have understood the need to breathe. In addition, Dr. Hu described at length the physiological reactions that occur during drowning, including hemorrhaging and acute expansion of the lungs and the large quantity of foam produced when inhaled water mixes with air and proteins in the lungs. Dr. Hu also described several post-mortem photographs, previously admitted during the guilt phase, which depicted hemorrhaging of Devon's lungs and foam on his face.

¶13    Chappell told reporters during a post-arrest press conference that Devon had struggled while in the pool. Chappell also stated that, hours after the drowning, he could still remember Devon "looking at [him] straight in the eyes as he was in the water." These facts support a finding that Devon consciously experienced mental anguish before his death. The jurors also could have reasonably inferred from this evidence that Chappell knew or should have known that Devon would suffer. Therefore, sufficient evidence supported the jurors' finding that the murder was especially cruel.

¶14    Chappell also argues that drowning alone is insufficient to support a finding of cruelty, citing *State v. Poland*, 132 Ariz. 269, 285, 645 P.2d 784, 800 (1982) (noting lack of evidence of victims' suffering or a struggle), and *State v. Poland*, 144 Ariz. 388, 405, 698 P.2d 183, 200 (1985) (noting,

after retrial, absence of evidence that "victims were conscious at the time of death").  But here, unlike *Poland*, the record supports a finding that Devon was conscious and struggled during the drowning.  *See State v. Amaya-Ruiz*, 166 Ariz. 152, 177-78, 800 P.2d 1260, 1285-86 (1990) (evidence of struggle supports cruelty finding).

¶15     Chappell further argues that, absent physical pain, a cruelty finding requires "extreme mental anguish from a victim anticipating [his or her] impending death," asserting that the two-year-old victim here was unable to comprehend imminent death.  We have previously rejected the argument that "extreme" mental anguish is required to establish the (F)(6) aggravator.  *See State v. Andriano*, 215 Ariz. 497, 511 ¶ 67, 161 P.3d 540, 554 (2007) (citing *Trostle*, 191 Ariz. at 18, 951 P.2d at 883).  And the mere fact that Devon was two years old, and possibly did not comprehend he was dying, did not prevent the jury from finding that he consciously experienced mental anguish before his death.  *See State v. Lopez*, 174 Ariz. 131, 143-44, 847 P.2d 1078, 1090-91 (1992) (cruelty finding based, in part, on one-year-old's mental anguish, knowing that his father had severely beaten him and "did nothing to stop the pain and comfort him").[4]

---

[4]     Because we conclude that the (F)(6) aggravator has been established through evidence of mental anguish, we need not consider Chappell's various arguments about the level and type of physical pain required to establish especial cruelty.

### 2. Expert Opinion on Ultimate Issue

¶16    Chappell argues Dr. Hu's testimony that drowning was a "horrifying experience" and a "10" on "scale of 1 to 10" was improper expert opinion on an ultimate issue.   We review evidentiary rulings on the admissibility of expert opinions for abuse of discretion.  *See State v. Chapple*, 135 Ariz. 281, 297, 660 P.2d 1208, 1224 (1983).

¶17    Arizona Rule of Evidence 704 permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact," as long as the opinion "assist[s] the trier of fact to understand the evidence or to determine a fact in issue."  Ariz. R. Evid. 704 & cmt.  However, "[w]itnesses are not permitted as experts on how juries should decide cases," *id.*, and trial courts should exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice," Ariz. R. Evid. 403.

¶18    Chappell cites two out-of-state cases in which experts explicitly opined on whether the murder had been committed in the manner of the statutory aggravator.  *See State v. Hamilton*, 681 So. 2d 1217, 1225-26 (La. 1996) (expert testified murder was "heinous, atrocious or cruel"); *Commonwealth v. Crawley*, 526 A.2d 334, 346-47 (Pa. 1987) (expert defined torture as the production of "conscious pain" and testified that the murders satisfied "the definition of the word torture").  But, here, Dr.

9

Hu merely testified about the experience of drowning and did not opine whether Devon's murder was committed in an "especially cruel" manner. His comments neither were improper nor embraced an ultimate issue.

### 3. Prosecutorial Misconduct

¶19 Chappell alleges several instances of prosecutorial misconduct. We will not reverse a conviction based on "improper comments by the prosecutor . . . unless it is shown that there is a reasonable likelihood that the misconduct could have affected the jury's verdict." *State v. Newell*, 212 Ariz. 389, 403 ¶ 67, 132 P.3d 833, 847 (2006) (citation and internal quotations omitted); *see also Morris*, 215 Ariz. at 335 ¶ 46, 160 P.3d at 214 ("The misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" (quoting *State v. Hughes*, 193 Ariz. 72, 79 ¶ 26, 969 P.2d 1184, 1191 (1998))). We find no such misconduct here.

¶20 During the aggravation phase, the prosecutor discussed the large amounts of foam and water that drained from Devon's body when police officers pulled him from the pool and attempted to perform CPR, telling jurors "[e]very bit of that is evidence that you can consider when you[] consider cruelty." She also elicited testimony from Dr. Hu about the causes of the foaming and lung hemorrhaging and asked him to describe post-mortem photographs of Devon's lungs and face. Chappell argues this

10

testimony and argument improperly focused on injuries Devon sustained after losing consciousness.

¶21    On this record, we cannot determine whether the water-inhalation injuries occurred when Devon was conscious. But, even assuming those injuries occurred after Devon lost consciousness, we cannot conclude that the prosecutor committed misconduct. The jurors heard very similar testimony from Dr. Hu during the guilt phase without objection and were repeatedly instructed that they could consider everything they had previously heard in deciding whether the (F)(6) aggravator had been proven beyond a reasonable doubt.

¶22    The prosecutor elicited testimony from Dr. Hu that drowning would be a "horrifying" experience and a "10" on "a scale of 1 to 10." Chappell claims that because Dr. Hu later testified on cross-examination that he was "not sure" whether a two-year-old could comprehend impending death, his belief about what a typical adult would experience during drowning was both confusing and inflammatory. Dr. Hu's comments, however, were not limited to his characterization of drowning as "horrifying"; he also described the natural instinct to breathe and testified that a two-year-old child would understand the need and inability to breathe. Viewed as a whole, Dr. Hu's testimony addressed not only the experience of drowning in general, but the level of mental anguish that *this* victim likely would have

11

experienced, a proper area of inquiry and one in which the jury could reasonably have benefitted from expert testimony. *See* Ariz. R. Evid. 702 (expert testimony permitted when expert's "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

¶23     The prosecutor also referred several times during the aggravation phase to Devon's age and the prior choking incident. Because these comments concerned the (F)(6) "especially cruel" aggravator rather than the (F)(2) and (F)(9) aggravators, Chappell alleges they were improper and inflammatory. Although neither the victim's age nor a defendant's prior conviction is an element of especial cruelty, both facts were relevant here to establish whether Devon experienced mental anguish.[5] Moreover, the jury was specifically instructed that the victim's age was not to be "consider[ed] . . . in any way in deciding whether the murder was committed in an especially cruel manner."

¶24     During the aggravation phase, the prosecutor urged jurors to "find that when the community, when the legislature set forth statutory aggravators, those things make a person

---

[5]     The State argued that Devon experienced mental anguish from being unable to breathe because he had previously experienced that same sensation during the December choking incident. The State also argued that the prior choking incident had made Devon afraid of Chappell and that two-year-old Devon, inexplicably taken from his home in the middle of the night, likely experienced fear and uncertainty from the time he was awoken until his death.

eligible for death; . . . the State is confident you will find each of those three [aggravators] applied to this defendant and that each of those three are proven well beyond a reasonable doubt." During the penalty phase, she stated: "Society declares [its] attitude towards crimes by the punishment that it gives. We have express[ed] what we feel about a crime by the punishment that we impose." In context, both comments referred to the punishment the legislature has prescribed for certain crimes; neither comment was improper. *See United States v. Monaghan*, 741 F.2d 1434, 1441-42 & n.30 (D.C. Cir. 1984).

¶25 Even if a defendant fails to establish a specific instance of misconduct warranting reversal, we have found misconduct "if the cumulative effect of the incidents shows that the prosecutor intentionally engaged in improper conduct." *Roque*, 213 Ariz. at 228 ¶ 155, 141 P.3d at 403. Here, however, Chappell has failed to show that any prosecutorial misconduct occurred. *See State v. Bocharski*, 218 Ariz. 476, 492 ¶ 75, 189 P.3d 403, 419 (2008).

### 4. (F)(6) Jury Instructions

¶26 Chappell argues the aggravation phase jury instructions failed to sufficiently narrow the (F)(6) aggravator. That aggravator is unconstitutionally vague on its face. *Walton v. Arizona*, 497 U.S. 639, 654 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 589 (2002).

13

This vagueness, however, "may be remedied with appropriate narrowing instructions." *State v. Tucker*, 215 Ariz. 298, 310 ¶ 28, 160 P.3d 177, 189 (2007); *see also State v. Anderson*, 210 Ariz. 327, 352-53 ¶¶ 109-14, 111 P.3d 369, 394-95 (2005). We review de novo whether jury instructions correctly state the law. *State v. Moore*, 222 Ariz. 1, 16 ¶ 85, 213 P.3d 150, 165 (2009).

**¶27**     The jury instructions given here are materially identical to instructions approved in our previous cases.[6] *See, e.g.*, *State v. Velazquez*, 216 Ariz. 300, 308 ¶¶ 28-29, 166 P.3d

---

[6]     The jury was instructed as follows:

> All first degree murders are to some extent cruel. However this aggravating circumstance cannot be found to exist unless the State has proved beyond a reasonable doubt that the murder was "especially" cruel. "Especially" means unusually great or significant.

> "Especially cruel": The term "cruel" focuses on the victim's pain and suffering. To find that the murder was committed in an "especially cruel" manner you must find that the victim consciously suffered physical or mental pain, distress or anguish prior to death. A murder is especially cruel when there has been the infliction of pain and suffering in an especially wanton and insensitive or vindictive manner. The defendant must know or should have known that the victim would suffer. The victim must be conscious for at least some portion of the time when the pain and/or anguish was inflicted.

> You may not consider the age of the victim in any way in deciding whether the murder was committed in an especially cruel manner.

91, 99 (2007) (upholding instruction that "[t]he victim . . . be conscious for at least some portion of the time when the pain and/or anguish was inflicted"); *Andriano*, 215 Ariz. at 505-06 ¶¶ 40-41, 161 P.3d at 548-49 (same); *Anderson*, 210 Ariz. at 352-53 ¶ 111 & n.19, 111 P.3d at 394-95 & n.19. Contrary to Chappell's assertion, we have never required that the mental or physical pain used to establish the (F)(6) aggravator be "extreme" or above and beyond the pain inherent in the manner of death itself. *See, e.g.*, *Tucker*, 215 Ariz. at 310-11 ¶¶ 29-33, 160 P.3d at 189-90; *Andriano*, 215 Ariz. at 511 ¶ 67, 161 P.3d at 554. The instructions here adequately narrowed the aggravator and Chappell has failed to establish error.

## C. Penalty Phase

### 1. Execution Impact Evidence

¶28 Chappell argues the trial court improperly excluded evidence about the impact his execution would have on his family, including his young daughter. We review evidentiary rulings for abuse of discretion and defer to the trial court's determination of relevance. *State v. Smith*, 215 Ariz. 221, 232 ¶ 48, 159 P.3d 531, 542 (2007).

¶29 In capital cases, "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of

15

the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  This requirement, however, does not limit "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."  *Id.* at n.12.

¶30     We have previously held that execution impact evidence is not relevant to mitigation.  *Roque*, 213 Ariz. at 222 ¶ 119, 141 P.3d at 397.[7]  In *Roque*, we upheld the trial court's exclusion of sections of a letter from the defendant's sister that "addressed the suffering of [defendant's] family," concluding they were "altogether unrelated to defendant, to his character, or to the circumstance of the offense."  *Id.* (citation and internal quotations omitted).[8]  Similarly, the trial court did not abuse its discretion here in excluding the execution impact evidence.

---

[7]     Several courts have reached similar conclusions.  *See, e.g.*, *Stenson v. Lambert*, 504 F.3d 873, 891-92 (9th Cir. 2007); *Jackson v. Dretke*, 450 F.3d 614, 618 (5th Cir. 2006); *Williams v. State*, 168 S.W.3d 433, 445 (Mo. 2005); *Commonwealth v. Harris*, 817 A.2d 1033, 1053-54 (Pa. 2002); *but see State v. Stevens*, 879 P.2d 162, 167-68 (Or. 1994).

[8]     Although similar evidence has been admitted in some cases, in none of those cases was the admissibility of the execution impact evidence at issue on appeal.  *See, e.g.*, *Moore*, 222 Ariz. at 22-23 ¶ 134, 213 P.3d at 171-72; *Velazquez*, 216 Ariz. at 315 ¶ 74, 166 P.3d at 106; *State v. McGill*, 213 Ariz. 147, 162 ¶ 67, 140 P.3d 930, 945 (2006); *State v. Greene*, 192 Ariz. 431, 443 ¶ 58, 967 P.2d 106, 118 (1998).

## 2. Limits on Allocution

¶31    Chappell argues the trial court's warning that he might be subject to cross-examination if he disputed his guilt during allocution prevented him from freely exercising his right to allocution and the jury from considering all relevant mitigating evidence.

¶32    In Arizona, a defendant has a right to allocute before sentencing. Ariz. R. Crim. P. 19.1(d)(7), 26.10(b)(1). This right, however, is "not absolute." *Anderson*, 210 Ariz. at 350 ¶ 100, 111 P.3d at 392. Defendants may not "shift a mitigating circumstance . . . [into] allocution and thereby insulate that mitigating circumstance from rebuttal evidence." *State v. Armstrong*, 218 Ariz. 451, 463 ¶ 59, 189 P.3d 378, 390 (2008). We have repeatedly upheld trial courts' admonitions that defendants may be subject to cross-examination if they exceed the scope of permissible allocution. *See, e.g.*, *State v. Womble*, ___ P.3d ___, 2010 WL 2720408, *7-8 ¶¶ 42-45 (Ariz. July 12, 2010); *Armstrong*, 218 Ariz. at 463 ¶ 59, 189 P.3d at 390. The judge did not abuse his discretion in so warning Chappell.

¶33    We find similarly unpersuasive Chappell's argument that placing limits on his allocution violated due process. The cases Chappell cites address a complete denial of a defendant's right to speak before sentencing, rather than the effect of limiting such speech. *See, e.g.*, *Hill v. United States*, 368

17

U.S. 424, 428 (1962); *McGautha v. California*, 402 U.S. 183, 217–20 (1971); *Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir. 1992).  Here, in contrast, Chappell was permitted to speak to the jury before sentencing.

### 3. Allegations of Uncharged Prior Acts

¶34    Chappell argues the trial court erred by admitting, over objection, evidence of prior injuries Devon suffered while in Chappell's care as rebuttal to Chappell's mitigation evidence.  Chappell also argues that the admission of e-mails and statements from Shackleford about Devon's prior abuse violated his due process and Confrontation Clause rights.

¶35    Admission of evidence during the penalty stage of a capital case is not governed by the Arizona Rules of Evidence. A.R.S. §§ 13-751(C) ("At the penalty phase . . . the prosecution or the defendant may present any information that is relevant to any of the mitigating circumstances . . . regardless of its admissibility under the rules governing admission of evidence at criminal trials."), 13-752(G) ("At the penalty phase . . . the state may present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency . . . [and] any evidence that demonstrates that the defendant should not be shown leniency.").  We "give deference to a trial judge's determination of whether rebuttal evidence offered during the

18

penalty phase is 'relevant' within the meaning of the statute." *McGill*, 213 Ariz. at 156-57 ¶ 40, 140 P.3d at 939-40.

¶36     Chappell first argues the trial court erred by finding inapplicable at the penalty phase Arizona Rule of Evidence 403 and the standards articulated in *State v. Terrazas*, 189 Ariz. 580, 584, 944 P.2d 1194, 1198 (1997) ("[B]efore admitting evidence of prior bad acts [under Arizona Rule of Evidence 404(b)], trial judges must find that there is clear and convincing proof both as to the commission of the other bad act and that the defendant committed the act."). In *McGill*, we noted that, although admission of evidence during the penalty phase is controlled by the relevance standard articulated in §§ 13-751(C) and 13-752(G), "[a] judge's analysis in determining relevance [under § 13-751(C)] involves fundamentally the same considerations as does a relevancy determination under Arizona Rule of Evidence 401 or 403." 213 Ariz. at 156-57 ¶ 40, 140 P.3d at 939-40; *see also State v. Hampton*, 213 Ariz. 167, 180 ¶ 51, 140 P.3d 950, 963 (2006) (cautioning trial courts to "exclude evidence that is either irrelevant to the thrust of the defendant's mitigation or otherwise unfairly prejudicial"); *State v. Pandeli*, 215 Ariz. 514, 527-30 ¶¶ 41-59, 161 P.3d 557, 570-73 (2007) (considering relevance of the challenged penalty phase evidence and whether the evidence was unfairly prejudicial).

19

¶37    Despite these cautionary statements, we have explicitly rejected the argument that "Rule 404(b) . . . and this Court's related case law" govern the admission of other acts evidence during the penalty phase. *Martinez*, 218 Ariz. at 431 n.11, 189 P.3d at 358 n.11.  But the trial court nonetheless considered Rules 403 and 404(b) in its ruling, stating: "[B]ecause other acts evidence is often very harmful . . . the court has kept in mind the mandates of *Terrazas*[ ] and Rule 403."  Accordingly, the record does not establish the error of which Chappell complains.

¶38    Chappell next argues that admission of Shackleford's e-mails and police interviews violated his due process rights. "[D]ue process requires that a capital defendant receive notice of any hearsay statements to be introduced . . . and have 'an opportunity to either explain or deny them.'" *Hampton*, 213 Ariz. at 179 ¶ 49, 140 P.3d at 962 (quoting *State v. Greenway*, 170 Ariz. 155, 161, 823 P.2d 22, 28 (1991)).  Hearsay statements must also "contain sufficient indicia of reliability." *Id.* (citing *McGill*, 213 Ariz. at 160 ¶ 56, 140 P.3d at 943). Chappell does not contest that he received notice and an opportunity to deny or explain Shackleford's statements.  He argues, however, that the evidence lacked "sufficient indicia of reliability," noting that Shackleford repeatedly lied to police, was a suspect in Devon's murder, was not under oath when she

20

made the statements, and had a strong incentive to lie in order to deflect attention from herself.[9]

**¶39** The State presented direct and circumstantial evidence of Devon's prior injuries and their surrounding circumstances, including photographs and testimony from lay and expert witnesses, which supported an inference that Chappell was responsible for those injuries and corroborated Shackleford's statements. *See McGill*, 213 Ariz. at 160-61 ¶ 58, 140 P.3d at 943-44. Therefore, although Chappell attacked Shackleford's credibility, her statements bore sufficient indicia of reliability.

**¶40** Finally, Chappell argues that admission of Shackleford's statements violated the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 50-52 (2004). As Chappell acknowledges, we have previously rejected this argument, finding the Confrontation Clause inapplicable to penalty phase rebuttal evidence. *See, e.g.*, *McGill*, 213 Ariz. at 158 ¶ 49, 140 P.3d at 941. Chappell urges us to revisit our holding in light of *United States v. Mills*, 446 F. Supp. 2d 1115 (C.D. Cal. 2006) and several recent law review articles.

---

[9] Chappell also argues that the hearsay exceptions contained in Arizona Rules of Evidence 803 and 804 are inapplicable, and therefore preclude admission of Shackleford's statements. As discussed above, however, hearsay rules are not applicable to evidence presented in the penalty phase. *See* A.R.S. § 13-751(C).

21

¶41     Contrary to Chappell's contention, however, *Mills* does not conflict with *McGill*.   *Mills* specifically declined to "resolve . . . whether the jury's task of weighing aggravating against mitigating factors" is entitled to Confrontation Clause protection, limiting its holding only to the aggravation phase. 446 F. Supp. 2d at 1135 n.23.   We have distinguished hearsay used to establish aggravating factors from hearsay used as rebuttal evidence in the penalty phase, concluding that the former was entitled to Confrontation Clause protections and the latter was not.  *See McGill*, 213 Ariz. at 159 ¶ 51, 140 P.3d at 942.

### 4.   Sentencing Instructions

¶42     Chappell challenges the trial court's sentencing instructions on two grounds.   During the penalty phase, the trial court instructed the jury:

> If your verdict is that the defendant should be sentenced to death, the defendant will be sentenced to death.   If your verdict is that the defendant should be sentenced to life, the defendant will not be sentenced to death and the Court will sentence the defendant to either life without the possibility of release until 35 calendar years in prison are served, or natural life which means the defendant would never be released from prison.

¶43     Chappell first argues that the "instruction[s] misled the jury to believe [he] was eligible for parole if given a thirty-five year to life sentence."   The instructions, however, accurately described the statutory sentencing options.   *See*

22

A.R.S. § 13-751(A). Chappell's reliance on *Simmons v. South Carolina* is similarly unavailing because Chappell was eligible for release. *See* 512 U.S. 154, 161-64 (1994) (finding due process violation when prosecution argued future dangerousness and trial court failed to instruct jury that defendant was ineligible for parole); *see also Ramdass v. Angelone*, 530 U.S. 156, 169 (2000) ("*Simmons* applies only to instances where, as a legal matter, there is no possibility of parole if the jury decides the appropriate sentence is life in prison.").

¶44 Second, Chappell argues that the court's failure to instruct the jury that his child abuse sentence would be served consecutively to his murder sentence violated the mandates of *Lockett*, 438 U.S. at 604, and A.R.S. § 13-752(G). But Chappell has not established that his probable sentence on the child abuse charge is relevant to his "character or record [or] any of the circumstances of the [murder]." *See Lockett*, 438 U.S. at 604. Rather, as the trial court noted in denying Chappell's request, his sentence on the child abuse conviction was speculative and subject to possible reversal under a variety of different scenarios. In sum, the court did not err in refusing to give different instructions about Chappell's potential eligibility for release.[10]

---

[10] Chappell also argues that the trial court abused its discretion by refusing to accept his waiver of parole

23

### 5. Cumulative Mitigation Instruction

¶45    Chappell argues the trial court erred by refusing to instruct the jury that the "cumulative effect of mitigation" was a separate and independent mitigating factor. During the penalty phase, the trial court instructed the jurors to "individually determine if the total[ity] of the mitigation is sufficiently substantial to call for leniency," and to "decide how compelling or persuasive the totality of the mitigating factors are when compared against the totality of the aggravating factors." The court declined to give Chappell's requested instruction, stating "the information under mitigation assessment and the sentence on burden of proof covers everything."

¶46    The instructions fulfilled the purpose of Chappell's proffered instruction by informing jurors that they should consider his mitigation evidence in its "totality." Therefore, the trial court did not abuse its discretion in refusing to give Chappell's requested instruction.

### 6. Double Counting of Statutory Aggravators

¶47    Chappell argues his prior conviction and the victim's age were improperly used to establish both the (F)(6) aggravator

---

eligibility and instruct the jury that he had done so; however, he concedes that we have previously rejected this argument. *See State v. Dann*, 220 Ariz. 351, 372-73 ¶¶ 122-24, 207 P.3d 604, 625-26 (2009).

and the (F)(2) and (F)(9) aggravators, respectively. *See* A.R.S. § 13-751(F). He contends that the prosecutor's repeated references during the aggravation phase to the prior choking incident and Devon's age, coupled with an inadequate jury instruction during the penalty phase, allowed the jury to double-count these factors.

¶48 A prior conviction or other fact, such as the age of the victim, may be used to establish two aggravating factors so long as that fact is not weighed "twice in balancing aggravating and mitigating circumstances." *Velazquez*, 216 Ariz. at 307 ¶ 21, 166 P.3d at 98 (quoting *State v. Medina*, 193 Ariz. 504, 512 ¶ 25, 975 P.2d 94, 102 (1999)); *see also State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985). Chappell acknowledges that use of the prior choking incident to prove the (F)(6) aggravator "may not have been a problem if the sentencing had been by a judge . . . [who is] presumed to know the law," but alleges that the jury was not properly instructed and, therefore, could not have properly weighed the evidence.

¶49 We have previously held, however, that juries are capable of considering aggravation and mitigation, even when a fact is used to establish two aggravators. *See Velazquez*, 216 Ariz. at 307 ¶ 22, 166 P.3d at 98. The prosecutor's comments during the aggravation phase did not improperly encourage jurors to base their (F)(6) finding on the prior choking incident or

25

Devon's age. Therefore, the only question is whether the jury was properly instructed.

¶50        During the penalty phase, the trial court instructed the jurors:

> The State may not rely upon a single fact or aspect of the offense to establish more than one aggravating circumstance. Therefore, if you have found that two or more of the aggravating circumstances were proved beyond a reasonable doubt by a single aspect[] of the offense, such as the age of the victim, you are to consider that fact or aspect of the offense only once. In other words, you shall not consider twice any fact or aspect of the offense.

The instruction correctly informed jurors how to consider the aggravating factors.

### 7.    Jury's Request to Review Allocution

¶51        Chappell argues the trial court erred by refusing to provide jurors with a transcript of his allocution during deliberations. We review this decision for abuse of discretion. *State v. Johnson*, 122 Ariz. 260, 273, 594 P.2d 514, 527 (1979).

¶52        During penalty phase deliberations, the jury requested "a copy of [Chappell's] statement to the court." The judge told counsel that he was inclined to instruct the jurors to rely on their memories. Chappell objected, arguing his constitutional right to have the jurors consider all mitigating evidence would be violated by refusing their request. The judge overruled Chappell's objection and instructed the jurors: "Please rely on your own memory of the statement."

26

¶53    Arizona Rule of Criminal Procedure 22.3 gives trial courts discretion to permit jurors to rehear particular testimony during deliberations, but does not require the judge to provide transcripts to the jury:

> After the jurors have retired to consider their verdict, if they desire to have any testimony repeated, or if they or any party request additional instructions, the court may recall them to the courtroom and order the testimony read or give appropriate additional instructions. The court may also order other testimony read or give other instructions, so as not to give undue prominence to the particular testimony or instructions requested. Such testimony may be read or instructions given only after notice to the parties.

¶54    Here, the trial court's ruling was based on a concern that providing the jury with a transcript of Chappell's allocution would unduly emphasize that portion of the evidence. The court did not abuse its discretion in refusing the jury's request. *See State v. Jovenal*, 117 Ariz. 441, 443, 573 P.2d 515, 517 (App. 1977) (noting concern of some courts that, when "partial transcripts of the testimony" are provided to the jury, "undue emphasis is placed on the testimony thus made available in written form").

¶55    Chappell's constitutional claim is similarly unavailing. The jurors heard Chappell's allocution, and the mere fact that they were not given a written transcript during deliberations neither impeded their ability to consider it nor violated Chappell's constitutional rights.

27

### III. REVIEW OF DEATH SENTENCE

¶56     Because the murder occurred after August 1, 2002, we review for abuse of discretion the jury's aggravation findings and death sentence.  A.R.S. § 13-756(A).  Our review must be conducted even when, as here, the defendant fails to raise the issue on appeal.  *See Morris*, 215 Ariz. at 340 ¶ 76, 160 P.3d at 219.  We will affirm the jury's findings and sentence "if there is any reasonable evidence in the record to sustain [them]."  *Id.* at 340-41 ¶ 77, 160 P.3d at 219-20 (citation and internal quotation omitted).

¶57     Chappell does not contest the (F)(2) or (F)(9) aggravator.  The (F)(2) aggravator was established by the jury's guilty verdict on the child abuse charge.  The (F)(9) aggravator was established by the jury's explicit finding during the guilt phase that Devon was under the age of fifteen when he died.  Therefore, we conclude the jury did not abuse its discretion in finding that the (F)(2) and (F)(9) aggravators had been proven beyond a reasonable doubt.  *See State v. Cruz*, 218 Ariz. 149, 170 ¶ 136, 181 P.3d 196, 217 (2008) (finding no abuse of discretion when defendant did not contest aggravating factor).  In addition, for the reasons discussed above, the jury did not abuse its discretion in finding that the (F)(6) aggravator had been proven beyond a reasonable doubt.

¶58     Chappell offered evidence of the following mitigating

28

factors: (1) age; (2) impaired ability to appreciate the wrongfulness of his conduct; (3) lack of previous criminal history; (4) past good conduct and character; (5) commission of the offense was out of character; (6) educational accomplishments; (7) good behavior during pre-trial incarceration; (8) love for and by his family; (9) good conduct during trial; (10) remorse; (11) existence of an uncharged co-perpetrator (Shackleford); (12) cooperation with authorities; (13) good prospect of rehabilitation; (14) religious commitment and belief; (15) alcoholism; (16) impulsivity under stress; (17) mental health symptoms; (18) bipolar disorder; (19) attention deficit hyperactivity disorder; (20) unusual stress at or near the time of the incident; and (21) family history of mental illness.

¶59      Because the jury imposed the death penalty, it necessarily determined that Chappell's mitigation was not "sufficiently substantial to call for leniency." *See* A.R.S. § 13-751(E); *see also Morris*, 215 Ariz. at 341 ¶ 81, 160 P.3d at 220. "[W]e will not reverse the jury's decision so long as any reasonable jury could have concluded that the mitigation established by the defendant was not sufficiently substantial to call for leniency." *Morris*, 215 Ariz. at 341 ¶ 81, 160 P.3d at 220. Although Chappell presented a significant amount of mitigation evidence, in light of the "nature and strength" of

the three aggravating circumstances, we cannot conclude that the jury abused its discretion in sentencing Chappell to death. *Id.* at ¶ 82.

### IV. CROSS-APPEAL

¶60    The State cross-appeals from the trial court's ruling that Chappell was not required to disclose witness interview notes taken by his mitigation specialist. *See* A.R.S. § 13-4032(3). Because we affirm Chappell's convictions and sentences, this issue is moot and we decline to consider it. *See, e.g.*, *State v. McCray*, 218 Ariz. 252, 261 ¶ 46, 183 P.3d 503, 512 (2008); *State v. Mott*, 187 Ariz. 536, 547, 931 P.2d 1046, 1057 (1997).

### V. CONCLUSION

¶61    For the foregoing reasons, we affirm Chappell's convictions and sentences.[11]

_____
A. John Pelander, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____

[11]    Chappell raises sixteen issues to avoid preclusion on federal review. Those issues are presented verbatim in the Appendix.

30

_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice


**APPENDIX**

1. The death penalty is cruel and unusual under any circumstances and violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Harrod*, 200 Ariz. 309, 320 (2001).

2. The death penalty is imposed arbitrarily and irrationally in Arizona in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution, as well as Derek's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, § 4 of the Arizona Constitution. *State v. Beaty*, 158 Ariz. 232 (1988).

3. Application of the death penalty on the facts of this case would constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, 15 of the Arizona Constitution.

4. The prosecutor's discretion to seek the death penalty has no standards and therefore violates the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, 15 of the Arizona Constitution. *State v. Sansing*, 200 Ariz. 347, 361 (2001).

5. Aggravating factors under A.R.S. § 13-703(F) (renumbered as A.R.S. § 13-751(F), effective January 1, 2009) are elements of capital murder and must be alleged in an indictment and screened for probable cause. Arizona's failure to require this violates a defendant's right to due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4, 24 of the Arizona Constitution. *McKaney v. Foreman*, 209 Ariz. 268 (2004).

6.   The reasonable doubt instruction of *State v. Portillo*, 182 Ariz. 592 (1995), dilutes and shifts the burden of proof in violation of the Sixth Amendment to the United States Constitution. *State v. Ellison*, 213 Ariz. 116 (2006).

7.   Allowing the jury commissioner to "time screen" jurors over defense objection and in counsel's absence violated Derek's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and constituted structural error. *State v. Morris*, 215 Ariz. 324, 334 (2007).

8.   The absence of proportionality review of death sentences by Arizona courts denies capital defendants due process of law and equal protection and amounts to cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Gulbrandson*, 184 Ariz. 46 (1995). Proportionality review serves to identify which cases are "above the norm" of first-degree murder thus narrowing the class of defendants who are eligible for the death penalty.

9.   Arizona's capital sentencing scheme is unconstitutional because it does not require that the State prove that the death penalty is appropriate. Failure to require this proof violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Ring*, 200 Ariz. 267, 284 (2001) (*Ring I*), *rev'd on other grounds by Ring II*.

10. A.R.S. § 13-703 (renumbered as A.R.S. § 13-751, effective January 1, 2009) provides no objective standards to guide the sentencer in weighing the aggravating and mitigating circumstances and therefore violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Pandeli*, 200 Ariz. 365, 382 (2001).

11. Arizona's death penalty scheme is unconstitutional because it does not require the sentencer to find beyond a reasonable doubt that the aggravating circumstances outweigh the accumulated mitigating circumstances, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, §§ 4, 15 of the Arizona Constitution. *State v. Roque*, 213 Ariz. 193, 225-26 (2006).

12. A.R.S. § 13-703 does not sufficiently channel the sentencer's discretion. Aggravating circumstances should narrow the class of persons eligible for the death penalty and

reasonably justify the imposition of a harsher penalty. The broad scope of Arizona's aggravating factors encompasses nearly anyone involved in a murder, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *Pandeli*, 200 Ariz. 365, 382.

13. Victim impact evidence admitted at the penalty phase of the trial violated Derek's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, 13, 15, 23, 24 of the Arizona Constitution. *Lynn v. Reinstein*, 205 Ariz. 186, 191 (2003).

14. Execution by lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, and Article 2, § 15 of the Arizona Constitution. *State v. Hinchey*, 181 Ariz. 307 (1995).

15. Arizona's death penalty unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article 2, § 15 of the Arizona Constitution. *State v. Miles*, 186 Ariz. 10, 19 (1996).

16. Both offenses were committed by a 21 year old Derek. As the United States Supreme Court recognizes, "drawing the line at 18 is subject to the objections always raised against categorical rules." *Roper v. Simmons*, 543 U.S. 551, 554 (2005).

The *Roper* court recognized three differences between juveniles and adults that rendered "suspect any conclusion that a juvenile falls among the worst offenders" that the death penalty should be reserved for. 543 U.S. 551, 570. Summarily finding that a juvenile is no longer beset by those same differences simply because he has reached the age of 18 disregards "the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner." *See Gregg v. Georgia*, 428 U.S. 153 (1976).

Because "the line at 18" is arbitrary and capricious, execution by lethal injection of 21 year old Derek is cruel and unusual punishment that is fundamentally unfair and a violation of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and of Article 2, §§ 4, 15, 24 of the Arizona Constitution.