NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

WESLEY TODD WICKHAM, *Appellant.*

No. 1 CA-CR 13-0791
FILED 11-18-2014

---

Appeal from the Superior Court in Maricopa County
No.   CR2013-001992-001
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Charles R. Krull
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley, joined.

O R O Z C O, Judge:

¶1        Wesley Todd Wickham appeals his convictions and sentences for one count of aggravated assault, a class 3 felony, two counts of kidnapping, a class 2 felony, and one count of first degree burglary of a residential structure, a class 2 felony. Wickham's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), advising that after searching the entire appellate record, no arguable question of law was found. Wickham was afforded the opportunity to file a supplemental brief pro per, which he has done and we have considered. Our obligation is to review "the entire record for reversible error." *State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.2d 89, 96 (App. 1999). Finding no reversible error, we affirm Wickham's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        After calling V.G. to discuss a small outstanding debt, Wickham went to V.G.'s house to supposedly pay off his debt. Wickham briefly entered the house before going back outside. V.G. went into another room when Wickham left the house, and he testified that he "heard a commotion," which he assumed was Wickham coming back inside. V.G. stated that when he returned to the room where Wickham had come in, another man, who was wearing a black mask covering his face and holding a gun, was with Wickham. The man pointed the gun at V.G. and told him to sit down. Wickham walked past V.G. towards the bedrooms in the back of the house. V.G. refused to sit down and, after V.G. heard his girlfriend, M.M., scream from a back bedroom, a struggle ensued. The gun went off during the struggle, and the bullet grazed V.G's neck before embedding in the ceiling. Soon after, Wickham returned,"jumped" on V.G., and began hitting him. The man with the gun stood up and tried to aim the gun at V.G. Another shot was fired, hitting V.G. in the head and Wickham in the arm. Wickham shouted at the gunman, and the two fled from the house.

¶3        M.M., who lived in the house with V.G., testified that she knew Wickham was coming over that night, and she was in a back bedroom when he arrived. She stated that she did not realize anything was wrong until she saw Wickham come into the bedroom with a "frantic" look on his face. She testified that she screamed as Wickham gagged her and ordered her to lie on the floor face down. Wickham then left the room, and M.M. got up, ran into the master bedroom, grabbed her phone, locked herself in the bathroom, and called 911. M.M repeatedly stated the name "Wesley" to the 911 operator while she was on the phone, and she testified that she "wanted to make sure [the 911 operator] understood me. So I was spelling his name, W-e-s-l-e-y. In case I died."

¶4        R.B. testified that, on the night of the crimes, Wickham was staying at his apartment. R.B. awoke to a "commotion" in his bathroom, and when he investigated, he found "Wesley . . . in the bathtub, and it was about 3 inches full of water and full of blood . . . trying to stop his bleeding, you know, with the cold water and a towel wrapped around his arm." R.B. testified that another man was in the bathroom with Wickham, and he further stated that he had seen this same man in his apartment earlier that night with a gun. R.B. asked the two men to leave, which they did. R.B. later identified Wickham in a photo lineup provided by police.

¶5        When police arrived at V.G.'s house, officers spoke with both V.G. and M.M. V.G. was "bleeding quite a bit" when officers arrived. Officers performed a protective sweep inside the house, observing blood on the floor and a bullet hole in the ceiling. Officers accompanied V.G. to the hospital, where he was treated and released. When he returned home, V.G. refused to allow police to search his home for evidence. Officers returned with a search warrant, and they collected evidence, including pictures of a black backpack containing a black mask, a bandanna, duct tape, gloves, and a couple of knives. V.G. testified that Wickham brought this backpack into the house when Wickham first arrived.

¶6        Wickham was arrested in Tucson just over a week after the crimes occurred. He was charged, tried, and convicted by a jury on all charges. The jury likewise found several aggravating factors proven for each offense. The jury found that the aggravated assault, first degree burglary, and one of the kidnapping charges were dangerous offenses. Wickham was sentenced to 18 years for each kidnapping count and the first degree burglary count, and to 15 years for the aggravated assault count, all to be served concurrently. Wickham timely appealed. We have jurisdiction

pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes sections 12-120.21.A.1, 13-4031 and -4033.A.1 (West 2014).[1]

## DISCUSSION

**¶7**       We review the evidence in the light most favorable to sustaining the jury's verdict, and all reasonable inferences are resolved against the defendant. *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6, 103 P.3d 912, 914 (2005). Wickham raises two issues in his supplemental brief, which we analyze in turn.[2]

I.       Admissibility of Evidence

**¶8**       The State moved in limine before trial to exclude "any statements or references to the smell of marijuana in the victim[s'] residence, or evidence of drugs and/or drug paraphernalia found in the victims' residence during the search warrant search." Wickham argues the trial court erred by granting the State's motion and contends that this evidence "would have shown the jury the true lifestyle of [V.G. and M.M.]." Wickham further contends that no evidence linked him to the black backpack in V.G.'s house and that this evidence should have been excluded.

**¶9**       "We review evidentiary rulings for an abuse of discretion and defer to the trial court's determination of relevance." *State v. Chappell*, 225 Ariz. 229, 238, ¶ 28, 236 P.3d 1176, 1185 (2010). Relevant evidence is any evidence that "has a tendency to make a fact more or less probable than it would be without the evidence;" or any fact "of consequence in determining the action." Ariz. R. Evid. 401. After evidence is admitted as relevant, it is the jury's responsibility "to weigh the evidence as a whole, to resolve any inconsistencies therein, and then to determine whether or not a reasonable doubt exists." *State v. Money*, 110 Ariz. 18, 25, 514 P.2d 1014, 1021 (1973).

**¶10**       The trial court did not err in granting the State's motion in limine because evidence that the victims possessed drug paraphernalia and stored it in their house does not make it any more or less probable that Wickham committed the crimes at issue. The Arizona Rules of Evidence do

---

[1]       We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

[2]       Wickham raises a third issue concerning the effectiveness of his trial counsel, which we do not address in a direct appeal. *See State ex.rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20, 153 P.3d 1040, 1044 (2007).

not allow for impeaching a witness's truthfulness using extrinsic evidence in the manner Wickham seeks. *See* Ariz. R. Evid. 608(b). The so-called "true lifestyle" of the victims was simply irrelevant to Wickham's guilt or innocence of the charged offenses.

¶11 Similarly, the trial court did not abuse its discretion in allowing the evidence concerning the black backpack. Although Wickham contends that no evidence linked him to the backpack, V.G. specifically testified that Wickham brought the backpack into the house. The backpack's existence was uncontested, and as part of the crime scene, the pictures of the backpack, its contents as documented by police, and V.G.'s testimony about it were relevant for the jury to consider. It was the jury's responsibility to assess the credibility of witnesses and weigh the evidence presented, and we will not reweigh the evidence on appeal. *See State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997).

II.    Wickham's Denied Mistrial Motions

¶12 Wickham next asserts that the trial court erred by denying his motions for mistrial made during R.B.'s testimony. While testifying about what he saw on the night of the crimes, R.B. twice stated that he knew Wickham was struggling with drug addiction and planning to enter a rehabilitation program. Wickham's counsel moved for a mistrial after both statements and both motions were denied.

¶13 We review mistrial motions for abuse of discretion. *State v. Hardy*, 230 Ariz. 281, 292, ¶ 52, 283 P.3d 12, 23 (2012). Declaring a mistrial "is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983).

¶14 Here, a "dramatic remedy" was not required. Although statements of Wickham's drug use and treatment plans were irrelevant and unnecessary, R.B. was admonished by the trial court to limit his testimony to the questions asked. The trial court was in the best position to assess the statements' effect on the jury, and because the record does not indicate that the statements prejudiced the jury against Wickham, the trial court did not err in denying the mistrial motions.

**CONCLUSION**

¶15 We have read and considered the briefs and carefully searched the entire appellate record for reversible error and have found

none. *See Clark*, 196 Ariz. at 541, ¶ 49, 2 P.3d at 100. The proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and we conclude substantial evidence supported the jury's verdicts. Wickham was represented by counsel at all critical stages of the proceedings. Wickham and his counsel were given an opportunity to speak at sentencing, and a legal sentence was imposed.

**¶16** Counsel's obligations pertaining to Wickham's representation in this appeal have ended. *See State v. Shattuck*, 140 Ariz. 582, 584, 684 P.2d 154, 156 (1984). Counsel need do nothing more than inform Wickham of the status of this appeal and any future options, unless Counsel's review reveals an issue appropriate for a petition for review to the Arizona Supreme Court. *See id.* at 585, 684 P.2d at 157. Wickham has thirty days from the date of this decision to proceed, if desired, with a pro per motion for reconsideration or petition for review.

**¶17** Wickham's convictions and sentences are affirmed.

