IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

JAMES ERIN MCKINNEY,
*Appellant.*

No. CR-93-0362-AP
Filed September 27, 2018

The Honorable Steven Douglas Sheldon, Judge
No. CR1991-090926 (B)

**Independent Review of Capital Sentence
SENTENCE AFFIRMED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Lacey Stover Gard, Chief Counsel, Capital Litigation Section, Jeffrey L. Sparks (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Sharmila Roy (argued), Laveen, Attorney for James Erin McKinney

JUSTICE GOULD authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL and JUSTICES PELANDER, TIMMER, BOLICK, and JUDGE VÁSQUEZ* joined.

JUSTICE GOULD, opinion of the Court:

* Justice John R. Lopez IV has recused himself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Garye L. Vásquez, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

¶1        We previously affirmed James Erin McKinney's two death sentences on independent review. *State v. McKinney* (*McKinney I*), 185 Ariz. 567, 587 (1996). However, in *McKinney v. Ryan* (*McKinney V*), 813 F.3d 798, 804, 823–24 (9th Cir. 2015) (en banc), the Ninth Circuit Court of Appeals held that *McKinney I* applied an unconstitutional "causal nexus" test to McKinney's mitigation evidence. We subsequently granted the State's motion to conduct a new independent review of McKinney's death sentences and, following such review, we affirm both sentences.

**I.**

¶2        In March 1991, McKinney and his half-brother, Charles Michael Hedlund, burglarized the home of Christine Mertens. *McKinney I*, 185 Ariz. at 572. Inside the residence, McKinney beat Mertens and stabbed her several times before holding her face-down on the floor and shooting her in the back of the head. *Id.* Two weeks later, the brothers burglarized the home of sixty-five-year-old Jim McClain and shot him in the back of the head while he slept in his bed. *Id.* The cases were consolidated for trial, and a jury found McKinney guilty of first degree murder as to both victims. *Id.*

¶3        During the sentencing phase, the trial court found several aggravating and mitigating circumstances. *See infra* ¶¶ 7–9, 15–16. After determining that the mitigating circumstances were not sufficiently substantial to call for leniency, the court sentenced McKinney to death for both murders. *McKinney I*, 185 Ariz. at 571.

¶4        We affirmed McKinney's convictions and sentences upon independent review. *Id.* at 587. McKinney subsequently filed a petition for habeas corpus, which the federal district court denied. *McKinney v. Ryan*, 2009 WL 2437238 (D. Ariz. 2009). On appeal, the Ninth Circuit reversed and remanded the case to the federal district court with instructions to grant McKinney's writ of habeas corpus "unless the [S]tate, within a reasonable period, either corrects the constitutional error in his death sentence or vacates the sentence and imposes a lesser sentence consistent with law." *Id.* at 827.

¶5        Following the Ninth Circuit's reversal in *McKinney V*, the State requested this Court to conduct a new independent review. McKinney opposed that motion, arguing that in light of *Ring v. Arizona*, 536 U.S. 584 (2002), he is entitled to a new sentencing trial before a jury. We disagree. Independent review is warranted here because McKinney's case was "final" before the decision in *Ring*. *See State v. Styers*, 227 Ariz. 186, 187–88 ¶¶ 5–6 (2011) (holding that "[b]ecause Styers had exhausted available appeals, his petition for certiorari had been denied, and the mandate had issued almost eight years before *Ring* was decided, his case was final, and he therefore is not entitled to have his case reconsidered in light of *Ring")*.

## II.

¶6        In conducting our independent review in pre-*Ring* cases like this, we examine "the trial court's findings of aggravation and mitigation and the propriety of the death sentence," and determine whether the defendant's proffered mitigation "is sufficiently substantial to warrant leniency in light of the existing aggravation." A.R.S. § 13–755(A); *see Styers*, 227 Ariz. at 188 ¶ 7. We must consider and weigh all mitigation evidence regardless of whether it bears a causal nexus to the underlying murders. *State v. Newell*, 212 Ariz. 389, 405 ¶ 82 (2006); *see also Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) (requiring sentencer to consider all relevant mitigating evidence). However, the lack of "a causal connection may be considered in assessing the quality and strength of the mitigation evidence." *Newell*, 212 Ariz. at 405 ¶ 82; *cf. Eddings*, 455 U.S. at 114–15 ("The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence.").

## A.

¶7        There is no reasonable doubt as to the aggravating circumstances found by the trial court regarding Mertens' murder. Specifically, McKinney (1) committed the murder with the expectation of pecuniary gain pursuant to former A.R.S. § 13-703(F)(5) (now § 13-

751(F)(5)),[1] and (2) he killed Mertens in an especially heinous, cruel or depraved manner, pursuant to § 13-751(F)(6).

¶8        McKinney proved several mitigating circumstances.  The record shows that he endured a horrific childhood.  At the sentencing hearing, McKinney's sister and aunt testified that McKinney was verbally and physically abused by his stepmother.  McKinney also experienced severe neglect.  His stepmother frequently deprived him of food, forced him to live in filthy conditions and wear soiled clothes, and regularly locked him out of the home in extreme temperatures.  *See McKinney V*, 813 F.3d at 805–06 (summarizing McKinney's evidence regarding childhood abuse and neglect).

¶9        McKinney also suffered from Post–Traumatic Stress Disorder ("PTSD") at the time of the murders.  Dr. Mickey McMahon, a clinical psychologist, evaluated McKinney and testified that McKinney's PTSD was caused by the abuse and trauma he experienced as a child.

¶10        Given the aggravating circumstances in this case, we conclude that McKinney's mitigating evidence is not sufficiently substantial to warrant leniency.  In weighing McKinney's mitigation evidence, we take into account the fact that it bears little or no relation to his behavior during Mertens' murder.  For example, Dr. McMahon testified that due to the PTSD, he believed that McKinney would "rather withdraw from [a] situation" in which he might encounter violence, and that his evaluation of McKinney "did not indicate that he was [a] thrill-seeking kind of person" who would murder someone in cold blood.  However, McKinney's actions during the Mertens murder were planned and deliberate.  Specifically, McKinney entered Mertens' home armed with a gun and knowing she was inside (because her car was parked outside).  Additionally, after invading Mertens' home, he intentionally beat, stabbed, and shot her.

¶11        We accord McKinney's remaining mitigation minimal weight.  For example, he argues that his age (twenty-three) at the time of the murders is a mitigator warranting leniency.  In deciding how heavily to

---

[1] A.R.S. § 13-703, the effective statute at the time of McKinney's crimes and first appeal, was renumbered as § 13-751 in 2008.  We refer to the current version of the statute.

weigh a defendant's age in mitigation, we consider the "defendant's level of intelligence, maturity, involvement in the crime, and past experience." *State v. Jackson*, 186 Ariz. 20, 30 (1996).

¶12          Here, McKinney was the leader in planning and executing the burglaries and expressed a willingness to kill to make them successful. We therefore give little weight to McKinney's age. *See State v. Garza*, 216 Ariz. 56, 72 ¶ 82 (2007) ("Age is of diminished significance in mitigation when the defendant is a major participant in the crime, especially when the defendant plans the crime in advance.").

¶13          McKinney also argued at sentencing that residual doubt as to his guilt calls for leniency. However, this Court has previously stated that "[o]nce a person is found guilty beyond a reasonable doubt, claims of innocence or residual doubt do not constitute mitigation for sentencing purposes." *State v. Moore*, 222 Ariz. 1, 22 ¶ 133 (2009).

¶14          In contrast to the proffered mitigation, the (F)(5) aggravator weighs heavily in favor of a death sentence. We agree with the conclusion reached in *McKinney I*:

> In comparison to the mitigating circumstances here, the quality of the [pecuniary gain] aggravating circumstance is great. . . . [T]his is not the case of a convenience store robbery gone bad but, rather, one in which pecuniary gain was the catalyst for the entire chain of events leading to the murders. The possibility of murder was discussed and recognized as being a fully acceptable contingency.

185 Ariz. at 584.

¶15          Additionally, the (F)(6) aggravator is entitled to great weight. The evidence shows that Mertens struggled to stay alive while McKinney stabbed and beat her. *See State v. Jones*, 185 Ariz. 471, 487 (1996) (stating that cruelty focuses on the mental anguish or physical abuse inflicted by the defendant on the victim before her death); *State v. Lopez*, 175 Ariz. 407, 411 (1993) (holding that murder was especially cruel where victim suffered numerous injuries during a struggle). The medical examiner testified that Mertens was beaten, stabbed multiple times, suffered several defensive wounds, and sustained a broken finger before being held face down on the

floor and shot in the back of the head. When her son found her body, Mertens was covered with blood and there was a pillow over her head. The carpet was soaked with blood, the telephone and cord were strewn on the floor, and Mertens' glasses were broken, indicating a struggle.

**B.**

¶16    There is also no reasonable doubt as to the following aggravating circumstances found by the trial court regarding McClain's murder: (1) McKinney was convicted of another offense (first degree murder of Mertens) for which a sentence of life imprisonment or death was imposable under Arizona law, under § 13-751(F)(1); and (2) he committed the murder with the expectation of pecuniary gain pursuant to A.R.S. § 13-751(F)(5).

¶17    McKinney proffered the same mitigation for both the McClain and Mertens murders. For the reasons discussed above, we place minimal weight on McKinney's mitigation. *See supra* ¶¶ 10–12. As part of this weighing, we simply note again that there is little or no connection between McKinney's mitigation and his behavior during the murder. For example, Dr. McMahon opined that burglarizing a home and shooting a sleeping man would be "the exact opposite" of what he would expect McKinney to do when affected by his PTSD.

¶18    In contrast, the aggravators for the McClain murder are particularly weighty. *See McKinney V*, 813 F.3d at 823 ("We recognize that there were important aggravating factors in this case. . . . McKinney [was] involved, as either the actual killer or as an accessory, in two murders; the murders had been done for pecuniary gain. . . ."). The (F)(1) aggravator involves the commission of multiple homicides and is therefore "extraordinarily weighty." *State v. Hampton*, 213 Ariz. 167, 184 ¶ 81 (2006) (discussing the extraordinary weight accorded the (F)(8) multiple homicides aggravator); *Garza*, 216 Ariz. at 72 ¶ 81 (same). Additionally, (F)(5) is a strong aggravator in the McClain murder. *See supra* ¶ 14. The crime was planned and deliberate. McKinney and Hedlund targeted McClain as a victim in order to rob him. Additionally, as was the case for the Mertens murder, McKinney had previously stated his intent to kill anyone he encountered during the burglary, which was evidenced by the fact he and Hedlund were armed when they entered McClain's home and then shot the unarmed victim as he slept in his bed. *See supra* ¶ 12.

**CONCLUSION**

¶19      For the reasons discussed above, we affirm McKinney's death sentences.