(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## McKINNEY *v.* ARIZONA

### CERTIORARI TO THE SUPREME COURT OF ARIZONA

No. 18–1109. Argued December 11, 2019—Decided February 25, 2020

An Arizona jury convicted petitioner James McKinney of two counts of first-degree murder. The trial judge found aggravating circumstances for both murders, weighed the aggravating and mitigating circumstances, and sentenced McKinney to death. Nearly 20 years later, the Ninth Circuit held on habeas review that the Arizona courts violated *Eddings* v. *Oklahoma,* 455 U. S. 104, by failing to properly consider as relevant mitigating evidence McKinney's posttraumatic stress disorder. McKinney's case then returned to the Arizona Supreme Court. McKinney argued that he was entitled to a jury resentencing, but the Arizona Supreme Court itself reweighed the aggravating and mitigating circumstances, as permitted by *Clemons* v. *Mississippi,* 494 U. S. 738, and upheld both death sentences.

*Held*: A *Clemons* reweighing is a permissible remedy for an *Eddings* error, and when an *Eddings* error is found on collateral review, a state appellate court may conduct a *Clemons* reweighing on collateral review. McKinney's argument that a jury must resentence him does not square with *Clemons*, where the Court held that a reweighing of the aggravating and mitigating evidence may be conducted by an appellate court. 494 U. S., at 741. Because *Clemons* involved an improperly considered aggravating circumstance, McKinney maintains that it is inapposite here, where the case involves an improperly ignored mitigating circumstance. *Clemons*, however, did not depend on any unique effect of aggravators as distinct from mitigators. For purposes of appellate reweighing, there is no meaningful difference between subtracting an aggravator from one side of the scale and adding a mitigator to the other side. McKinney also argues that *Clemons* is no longer good law in the wake of *Ring* v. *Arizona,* 536 U. S. 584, and *Hurst* v. *Florida*, 577 U. S. ___, where the Court held that a jury must find the aggravating circumstance that makes the defendant death eligible.

Syllabus

But that does not mean that a jury is constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range. See *Apprendi* v. *New Jersey,* 530 U. S. 466, 481. McKinney notes that the Arizona trial court, not the jury, made the initial aggravating circumstance finding that made him eligible for the death penalty. But McKinney's case became final on direct review long before *Ring* and *Hurst*, which do not apply retroactively on collateral review, see *Schriro* v. *Summerlin,* 542 U. S. 348, 358, and the Arizona Supreme Court's 2018 decision reweighing the aggravators and mitigators did not constitute a reopening of direct review. Pp. 2–7.

245 Ariz. 225, 426 P. 3d 1204, affirmed.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, and GORSUCH, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which BREYER, SOTOMAYOR, and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1109

JAMES ERIN MCKINNEY, PETITIONER *v.* ARIZONA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF ARIZONA

[February 25, 2020]

JUSTICE KAVANAUGH delivered the opinion of the Court.

Over a 4-week span in early 1991, James McKinney and his half brother, Charles Hedlund, burglarized five residences in the Phoenix, Arizona, area. During one of the burglaries, McKinney and Hedlund beat and repeatedly stabbed Christine Mertens. McKinney then shot Mertens in the back of the head, fatally wounding her. In another burglary, McKinney and Hedlund killed Jim McClain by shooting him in the back of the head with a sawed-off rifle.

In 1992, an Arizona jury convicted McKinney of two counts of first-degree murder. Under this Court's precedents, a defendant convicted of murder is eligible for a death sentence if at least one aggravating circumstance is found. See *Tuilaepa* v. *California*, 512 U. S. 967 (1994); *Zant* v. *Stephens*, 462 U. S. 862 (1983); *Gregg* v. *Georgia*, 428 U. S. 153 (1976). McKinney's trial judge found aggravating circumstances for both murders. For the Mertens murder, the judge found that McKinney committed the murder for pecuniary gain and that McKinney killed Mertens in an especially heinous, cruel, or depraved manner. For the McClain murder, the judge found that McKinney committed the murder for pecuniary gain and that

McKinney had been convicted of another offense with a potential sentence of life imprisonment or death (the Mertens murder).

The trial judge then weighed the aggravating and mitigating circumstances and sentenced McKinney to death for both murders. In 1996, the Arizona Supreme Court affirmed McKinney's death sentences.

Nearly 20 years later, on federal habeas corpus review, an en banc panel of the U. S. Court of Appeals for the Ninth Circuit decided by a 6 to 5 vote that, in sentencing McKinney, the Arizona courts had failed to properly consider McKinney's posttraumatic stress disorder (PTSD) and had thereby run afoul of this Court's decision in *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). In *Eddings*, this Court held that a capital sentencer may not refuse as a matter of law to consider relevant mitigating evidence. *Id.,* at 113–114.

McKinney's case then returned to the Arizona Supreme Court. In that court, McKinney argued that he was entitled to resentencing by a jury. By contrast, the State asked that the Arizona Supreme Court itself conduct a reweighing of the aggravating and mitigating circumstances, as permitted by *Clemons* v. *Mississippi*, 494 U. S. 738 (1990). The Arizona Supreme Court agreed with the State. The court itself reviewed the evidence in the record and reweighed the relevant aggravating and mitigating circumstances, including McKinney's PTSD. The court upheld both death sentences. 245 Ariz. 225, 426 P. 3d 1204 (2018).

McKinney petitioned for certiorari in this Court. Because of the importance of the case to capital sentencing in Arizona, we granted certiorari. 587 U. S. ___ (2019).

The issue in this case is narrow. McKinney contends that after the Ninth Circuit identified an *Eddings* error, the Arizona Supreme Court could not itself reweigh the aggravating and mitigating circumstances. Rather, according to McKinney, a jury must resentence him.

McKinney's argument does not square with this Court's

decision in *Clemons*. In *Clemons*, a Mississippi jury sentenced the defendant to death based in part on two aggravating circumstances. After the Mississippi Supreme Court determined that one of the aggravators was unconstitutionally vague, the defendant argued that he was entitled to resentencing before a jury so that the jury could properly weigh the permissible aggravating and mitigating evidence. This Court disagreed. The Court concluded that the Mississippi Supreme Court could itself reweigh the permissible aggravating and mitigating evidence. 494 U. S., at 745–750. This Court stated that "the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review." *Id.,* at 741. The Court explained that a *Clemons* reweighing is not a resentencing but instead is akin to harmless-error review in that both may be conducted by an appellate court.

McKinney contends that *Clemons* does not apply here. He raises two basic arguments.

*First*, McKinney maintains that *Clemons* involved an improperly considered aggravating circumstance, whereas his case involves what the Ninth Circuit said was an improperly ignored mitigating circumstance. But the Court's analysis in *Clemons* hinged on its assessment of appellate courts' ability to weigh aggravating and mitigating evidence, not on any unique effect of aggravators as distinct from mitigators. After noting that the "primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime," the Court explained that nothing "inherent in the process of appellate reweighing is inconsistent" with that objective. *Id.,* at 748. Indeed, the Court explicitly rejected the argument that "appellate courts are unable to fully consider and give effect to

the mitigating evidence presented by defendants at the sentencing phase in a capital case." *Ibid.* And the Court concluded that a state appellate court may uphold the death sentence after a "reweighing of the aggravating and mitigating evidence." *Id.,* at 741.

In deciding whether a particular defendant warrants a death sentence in light of the mix of aggravating and mitigating circumstances, there is no meaningful difference for purposes of appellate reweighing between subtracting an aggravator from one side of the scale and adding a mitigator to the other side. Both involve weighing, and the Court's decision in *Clemons* ruled that appellate tribunals may perform a "reweighing of the aggravating and mitigating evidence." *Ibid.* In short, a *Clemons* reweighing is a permissible remedy for an *Eddings* error.

*Second*, the Court decided *Clemons* back in 1990, and McKinney argues that *Clemons* is no longer good law in the wake of this Court's decisions in *Ring* v. *Arizona*, 536 U. S. 584 (2002), and *Hurst* v. *Florida*, 577 U. S. ___ (2016). According to McKinney, appellate courts may no longer reweigh aggravating and mitigating circumstances in determining whether to uphold a death sentence. McKinney is incorrect.

In *Ring*, this Court held that capital defendants "are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment"—in particular, the finding of an aggravating circumstance. 536 U. S., at 589. In *Hurst*, the Court applied *Ring* and decided that Florida's capital sentencing scheme impermissibly allowed "a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty." 577 U. S., at ___ (slip op., at 9).

Under *Ring* and *Hurst*, a jury must find the aggravating circumstance that makes the defendant death eligible. But importantly, in a capital sentencing proceeding just as in

an ordinary sentencing proceeding, a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range. In *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), this Court carefully avoided any suggestion that "it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.*, at 481. And in the death penalty context, as Justice Scalia, joined by JUSTICE THOMAS, explained in his concurrence in *Ring*, the decision in *Ring* "has nothing to do with jury sentencing. What today's decision says is that the jury must find the existence of the *fact* that an aggravating factor existed." 536 U. S., at 612; see also *Kansas* v. *Carr*, 577 U. S. \_\_\_, \_\_\_–\_\_\_ (2016) (slip op., at 9–11). Therefore, as Justice Scalia explained, the "States that leave the ultimate life-or-death decision to the judge may continue to do so." *Ring*, 536 U. S., at 612.

In short, *Ring* and *Hurst* did not require jury weighing of aggravating and mitigating circumstances, and *Ring* and *Hurst* did not overrule *Clemons* so as to prohibit appellate reweighing of aggravating and mitigating circumstances.

In addition to those two arguments about *Clemons*, McKinney advances an additional argument based on *Ring* and *Hurst*. This argument focuses not on the weighing of aggravators and mitigators, but rather on the Arizona trial court's initial 1993 finding of the aggravating circumstances that made McKinney eligible for the death penalty. McKinney points out that a *jury* did not find the aggravating circumstances, as is now required by *Ring* and *Hurst*.

The hurdle is that McKinney's case became final on direct review in 1996, long before *Ring* and *Hurst*. *Ring* and *Hurst* do not apply retroactively on collateral review. See *Schriro* v. *Summerlin*, 542 U. S. 348, 358 (2004). Because this case comes to us on state collateral review, *Ring* and *Hurst* do

not apply.

McKinney says, however, that this case has a twist. He asserts that the Arizona Supreme Court's 2018 decision reweighing the aggravators and mitigators constituted a reopening of *direct* review. Because this case (as McKinney sees it) is again on direct review, McKinney argues that he should receive the benefit of *Ring* and *Hurst*—namely, a jury resentencing with a jury determination of aggravating circumstances.

But the premise of that argument is wrong because the Arizona Supreme Court's reweighing of the aggravating and mitigating circumstances occurred on collateral review, not direct review. In conducting the reweighing, the Arizona Supreme Court explained that it was conducting an independent review in a collateral proceeding. The court cited its prior decision in *State* v. *Styers*, 227 Ariz. 186, 254 P. 3d 1132 (2011), which concluded that Arizona could conduct such an independent review in a collateral proceeding. See also Ariz. Rev. Stat. Ann. §13–755 (2010); *State* v. *Hedlund*, 245 Ariz. 467, 470–471, 431 P. 3d 181, 184–185 (2018). Under these circumstances, we may not second-guess the Arizona Supreme Court's characterization of state law. See *Mullaney* v. *Wilbur*, 421 U. S. 684, 691 (1975); see also *Jimenez* v. *Quarterman*, 555 U. S. 113, 120, n. 4 (2009); *Styers* v. *Ryan*, 811 F. 3d 292, 297, n. 5 (CA9 2015). As a matter of *state* law, the reweighing proceeding in McKinney's case occurred on collateral review.

McKinney responds that the state label of collateral review cannot control the finality question; that a *Clemons* reweighing is a sentencing proceeding; and that a *Clemons* reweighing therefore may occur only on direct review (or on reopening of direct review). But *Clemons* itself, over a vigorous dissent, stated that an appellate reweighing is not a sentencing proceeding that must be conducted by a jury. See 494 U. S., at 741, 744–755. The appellate reweighing is akin to harmless-error review. Courts routinely conduct

harmless-error review in collateral proceedings. Cf., *e.g., Brecht* v. *Abrahamson*, 507 U. S. 619, 638 (1993). There is no good reason—and McKinney supplies none—why state courts may not likewise conduct a *Clemons* reweighing on collateral review. As relevant here, when an *Eddings* error is found on collateral review, a state court may conduct a *Clemons* reweighing on collateral review.* Here, therefore, the Arizona Supreme Court permissibly conducted a *Clemons* reweighing on collateral review.

*          *          *

This Court's precedents establish that state appellate courts may conduct a *Clemons* reweighing of aggravating and mitigating circumstances, and may do so in collateral proceedings as appropriate and provided under state law. We affirm the judgment of the Arizona Supreme Court.

*It is so ordered.*

————————

*Moreover, the District Court's conditional writ in this case merely required Arizona to correct a purported *Eddings* error. As we have explained, an *Eddings* error may be remedied on appeal or on collateral review. Our holding here does not suggest that a State, by use of a collateral label, may conduct a new trial proceeding in violation of current constitutional standards.

# SUPREME COURT OF THE UNITED STATES

_____

No. 18–1109

_____

## JAMES ERIN MCKINNEY, PETITIONER *v.* ARIZONA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
ARIZONA

[February 25, 2020]

JUSTICE GINSBURG, with whom JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

Petitioner James Erin McKinney, convicted in Arizona of two counts of first-degree murder, was sentenced to death in 1993. At that time, Arizona assigned capital sentencing to trial judges. To impose a death sentence, the judge had to find at least one aggravating circumstance and "no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. Ann. §13–703(E) (1993). In 2002, in *Ring* v. *Arizona*, 536 U. S. 584 (2002), this Court held Arizona's capital sentencing regime unconstitutional. The "aggravating factors" that render a defendant eligible for capital punishment in Arizona, the Court reasoned, "operate as 'the functional equivalent of an element of a greater offense.'" *Id.*, at 609 (quoting *Apprendi* v. *New Jersey*, 530 U. S. 466, 494, n. 19 (2000)). "[T]he Sixth Amendment [therefore] requires that [such aggravating factors] be found by a jury." *Ibid.*; see *Hurst* v. *Florida*, 577 U. S. ___, ___ (2016) (slip op., at 1) ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."). Here in dispute, does *Ring* apply to McKinney's case?[1] If it does, then McKinney's death sentences—imposed based on aggravating factors found by a

_____

[1] McKinney's primary argument rests on *Ring*. See Brief for Petitioner 19–33. Curiously, the Court devotes most of its opinion, *ante*, at 2–5, to

judge, not a jury—are unlawful.

The Constitution, this Court has determined, requires the application of new rules of constitutional law to cases on direct review. *Griffith* v. *Kentucky*, 479 U. S. 314, 322–323 (1987). Such rules, however, do not apply retroactively to cases on collateral review unless they fall within one of two exceptions. *Teague* v. *Lane*, 489 U. S. 288, 310 (1989) (plurality opinion).[2] This Court has already held that *Ring* does not fall within those exceptions. See *Schriro* v. *Summerlin*, 542 U. S. 348, 358 (2004). Thus, the pivotal question: Is McKinney's case currently on direct review, in which case *Ring* applies, or on collateral review, in which case *Ring* does not apply?[3] I would rank the Arizona Supreme Court's proceeding now before this Court for review as direct in character. I would therefore hold McKinney's death sentences unconstitutional under *Ring*, and reverse the judgment of the Arizona Supreme Court.

## I

Upon the imposition of a death sentence in Arizona, a defendant's appeal bypasses the intermediate appellate court

---

McKinney's alternative argument: that *Eddings* error cannot be corrected by an appellate court. Brief for Petitioner 33–47 (discussing *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982)). Because I conclude that *Ring* is dispositive here, I do not reach McKinney's fallback argument.

[2] "[S]ubstantive" rules—"rules according constitutional protection to an actor's primary conduct" or "placing a certain class of individuals beyond the State's power to punish" in a particular manner—apply on collateral review. *Penry* v. *Lynaugh*, 492 U. S. 302, 329–330 (1989). The same is true of "watershed rules of criminal procedure." *Teague*, 489 U. S., at 311.

[3] Direct review immediately challenges a conviction; collateral review, occurring after a completed appeal, "is secondary and limited." *Brecht* v. *Abrahamson*, 507 U. S. 619, 633 (1993) (internal quotation marks omitted).

and moves directly from the trial court to the Arizona Supreme Court. See Ariz. Rev. Stat. Ann. §13–4031 (2010).[4] The statute governing such an appeal, §13–755, instructs: "The supreme court shall review all death sentences. On review, the supreme court shall independently review the trial court's findings of aggravation and mitigation and the propriety of the death sentence." §13–755(A).[5] Independent review under §13–755 entails "review[ing] the entire record" without deference to the factfinder, to determine, *de novo*, "whether a capital sentence is not only legally correct, but also appropriate." *State* v. *Roseberry*, 237 Ariz. 507, 509–510, 353 P. 3d 847, 849–850 (2015). In 1996, the Arizona Supreme Court reviewed McKinney's sentences under the foregoing scheme and affirmed the trial court's dispositions.

McKinney then sought a writ of habeas corpus in federal court. In 2015, the en banc United States Court of Appeals for the Ninth Circuit concluded that the Arizona Supreme Court, when it independently reviewed McKinney's sentences in 1996, committed constitutional error. Specifically, the state court, in violation of *Eddings* v. *Oklahoma*, 455 U. S. 104, 113–114 (1982),[6] refused to consider as mitigating evidence the posttraumatic stress disorder (PTSD) McKinney suffered as a result of his horrific childhood. See

_____

[4] "Arizona's capital sentencing statutes were reorganized and renumbered in 2008." *State* v. *Chappell*, 225 Ariz. 229, 234, n. 3, 236 P. 3d 1176, 1181, n. 3 (2010). This opinion cites a statute's current version when materially identical to the text in effect at the relevant time.

[5] Section 13–755 remains in effect for crimes committed before August 1, 2002. *State* v. *Morris*, 215 Ariz. 324, 340, 160 P. 3d 203, 219 (2007).

[6] In *Eddings*, the sentencing judge and appellate court found mitigating evidence about the defendant's "family history" irrelevant as a matter of law. 455 U. S., at 113. This Court held: "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.*, at 113–114.

*McKinney* v. *Ryan*, 813 F. 3d 798, 804. Reversing the District Court's judgment denying the writ of habeas corpus, the Court of Appeals remanded the case "with instructions to grant the writ with respect to McKinney's sentence unless the state, within a reasonable period, either corrects the constitutional error in his death sentence or vacates the sentence and imposes a lesser sentence consistent with law." *Id.*, at 827. This Court denied the State's petition for certiorari. *Ryan* v. *McKinney*, 580 U. S. ___ (2016).

The State thereupon asked the Arizona Supreme Court to "conduct a new independent review of McKinney's death sentence" "to cure any error in [the prior] independent review." App. 389. Granting the State's motion in 2018, Arizona's highest court again did as the independent-review statute instructs. See *supra,* at 3. Specifically, the court first determined that "no reasonable doubt" existed "as to the aggravating circumstances found by the trial court." 245 Ariz. 225, 227, 426 P. 3d 1204, 1206 (2018). It then noted that "McKinney [had] proved several mitigating circumstances," including "PTSD . . . caused by the abuse and trauma he experienced as a child." *Ibid.* "Given the aggravating circumstances," however, the court "conclude[d] that McKinney's mitigating evidence [wa]s not sufficiently substantial to warrant leniency." *Ibid.* It therefore "affirm[ed] McKinney's death sentences" for a second time. *Id.*, at 229, 426 P. 3d, at 1208.

## II

### A

Beyond doubt, the Arizona Supreme Court engaged in direct review in 1996. A defendant's first opportunity to appeal his conviction and sentence is the archetype of direct review. See *Brecht* v. *Abrahamson*, 507 U. S. 619, 633 (1993) ("Direct review is the principal avenue for challenging a conviction.").

The Arizona Supreme Court's 2018 proceeding was essentially a replay of the initial direct review proceeding. The State's request for "a *new* independent review," App. 389 (emphasis added), asked the Arizona Supreme Court to resume and redo direct review, this time in accord with *Eddings*. See Webster's Third New International Dictionary 1522 (2002) ("new": "beginning or appearing as the recurrence, resumption, or repetition of a previous act or thing"). The Arizona Supreme Court proceeded accordingly. That court retained for its "new independent review" the docket number earlier assigned to its initial review, App. 1, 6–11, and docket entries show that the original 1996 appeal was "Reinstated," *id.*, at 1. In its 2018 review, the Arizona Supreme Court "examine[d] 'the trial court's findings of aggravation and mitigation and the propriety of the death sentence'" afresh, treating that court's 1996 decision as though it never issued. 245 Ariz., at 227, 426 P. 3d, at 1206 (quoting §13–755). See also *supra*, at 4.

Renewal of direct review cannot sensibly be characterized as anything other than direct review. The Arizona Supreme Court's 2018 proceeding retread ground traversed in 1996; the two proceedings differed only in that the court's 2018 review was free of *Eddings* error. If, as the State does not contest, the court's 1996 review ranked as review direct in character, so, too, did its 2018 do-over.[7]

B

The State urges that the Arizona Supreme Court's decision in *State* v. *Styers*, 227 Ariz. 186, 254 P. 3d 1132 (2011),

———————

[7] Further, the reason new rules do not apply on collateral review—namely, that "considerations of finality" weigh heavily when "trials and appeals conformed to then-existing constitutional standards," *Teague* v. *Lane*, 489 U. S. 288, 309–310 (1989) (plurality opinion)—has little purchase here, where the replay of direct review was occasioned by constitutional error in the first appeal. See *McKinney* v. *Ryan*, 813 F. 3d 798, 804, 822–823 (CA9 2015).

compels a different classification of that court's 2018 proceeding. In *Styers*, as here, the Arizona Supreme Court conducted a new independent review to correct *Eddings* error in its previous decision affirming the defendant's death sentence. 227 Ariz., at 187, 254 P. 3d, at 1133. The Arizona Supreme Court regarded its second look in *Styers* as a collateral review for retroactivity purposes, *id*., at 187–188, and n. 1, 254 P. 3d, at 1133–1134, and n. 1, and followed suit in its 2018 renewed examination in this case, 245 Ariz., at 226–227, 426 P. 3d, at 1205–1206. This Court, the State maintains, is bound by that state-law classification. Brief for Respondent 22–25. The State's argument should be unavailing. Whether the Constitution requires the application of law now in force is a question of federal constitutional law, not an issue subject to state governance. See *Griffith*, 479 U. S., at 322–323.

C

The Court does not today hold that the classification a state supreme court assigns to a proceeding is inevitably dispositive of a retroactivity question of the kind this case presents. See *ante*, at 7, n. *. Instead, the Court looks first to the State's classification of a proceeding, and then asks whether the character of the proceeding warrants the classification. See *ante*, at 6–7 (review was "akin to harmless-error review," which may be conducted on collateral review).

Accepting "collateral" as a fit description of the 2018 Arizona Supreme Court review proceeding, the Court relies on *Clemons* v. *Mississippi*, a decision holding that appellate courts can reweigh aggravating and mitigating factors as a form of "harmless-error analysis" when the factfinder "relied in part on an invalid aggravating circumstance." 494 U. S. 738, 744, 752 (1990). Here, however, *the Ninth Circuit* engaged in harmless-error review when that court evaluated McKinney's federal habeas petition—and found the

Arizona Supreme Court's 1996 *Eddings* error harmful. *McKinney*, 813 F. 3d, at 822–824. The State accordingly asked the Arizona Supreme Court "to *cure* [that] error" by conducting a new independent review proceeding. App. 389 (emphasis added). In determining *de novo* in 2018 whether McKinney's death sentences were "not only legally correct, but also appropriate," *Roseberry*, 237 Ariz., at 509, 353 P. 3d, at 849, the Arizona Supreme Court was not conducting garden-variety harmless-error review of a lower court decision; it was rerunning direct review to correct its own prior harmful error.

\* \* \*

Dissenting in *Styers*, then-Justice Hurwitz explained:

"[I]ndependent review is the paradigm of direct review—we determine, de novo, whether the trial court, on the facts before it, properly sentenced the defendant to death. Thus, what the State sought in this case— and what the Court has granted—is a new direct review of the death sentence, designed to obviate a constitutional error occurring in the original appeal." 227 Ariz., at 191, 254 P. 3d, at 1137 (internal quotation marks omitted).

Exactly right. Because *Ring* controls post 2002 direct review proceedings, I would apply that precedent here and reverse the judgment of the Arizona Supreme Court.