# Supreme Court of Florida

_____

No. SC20-243
_____

**NORMAN BLAKE MCKENZIE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

February 10, 2022

PER CURIAM.

Norman Blake McKenzie was convicted and sentenced to death for the first-degree murders of Randy Wayne Peacock and Charles Frank Johnston in St. Johns County. Originally convicted and sentenced to death in 2007, McKenzie received a new penalty phase in light of *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020). In February 2020, McKenzie was resentenced to death for both murders. This is the direct appeal of his resentencing. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. We affirm McKenzie's sentences of death.

## FACTS AND PROCEDURAL BACKGROUND

## Guilt Phase

On direct appeal, this Court set forth the following facts:

The evidence presented at trial established that on October 5, 2006, two Flagler Hospital employees became concerned when Randy Peacock, a respiratory therapist at the hospital, did not report to work. The two employees drove to the home that Peacock shared with Charles Johnston. Upon their arrival, they noticed that Peacock's vehicle, a green convertible, was not there. When the employees entered the residence, they found Peacock lying face down on the kitchen floor in a pool of blood. When deputies from the St. Johns County Sheriff's Office (SJSO) arrived, they secured the scene and subsequently located the body of Charles Johnston in a shed that was also located on the property. While processing the crime scene, law enforcement officers located a hatchet inside the shed that appeared to have blood on its blade and handle. A butcher knife was found in the kitchen sink. Deputies observed a gold sport utility vehicle (SUV) in the driveway and determined that it was registered to Norman Blake McKenzie.

The deputies subsequently spoke with a neighbor of the victims. The neighbor stated that on October 4, 2006, he went to the victims' home to assist Johnston with repairs on his vehicle. When the neighbor first arrived, Johnston was not there but Peacock was present and was speaking with a man whom the neighbor later identified in a photo lineup as McKenzie. The neighbor confirmed that he saw Peacock speaking with McKenzie between 4:30 and 7 p.m., and that he also observed a gold SUV in the driveway. The neighbor departed the victims' residence before dark.

McKenzie subsequently had an encounter with a Citrus County sheriff's deputy during which Randy Peacock's wallet was recovered from one of McKenzie's pockets. Further, Charles Johnston's wallet was located in a vehicle that McKenzie had recently operated. McKenzie agreed to speak with SJSO deputies on two separate occasions during which he confessed to the murders of Peacock and Johnston.

McKenzie explained that he went to the victims' residence on October 4, 2006, to borrow money from Johnston because of his drug addiction. When he first arrived, only Peacock and the neighbor were present; however, Johnston returned home around dusk. The neighbor left after briefly speaking with Johnston, and at some point, Peacock went inside the residence. McKenzie then asked Johnston for a hammer and a piece of wood so that he could knock some "dings" out of the door of his SUV. Johnston could not locate a hammer and gave McKenzie a hatchet. While walking into the shed to locate a piece of wood, McKenzie struck Johnston in the head with the blade side of the hatchet. Johnston fell to the floor and McKenzie struck him again. McKenzie then entered the home, approached Peacock, who was cooking in the kitchen, and struck him with the hammer side of the hatchet approximately two times.

McKenzie returned to the shed, and when he observed that Johnston was still alive, he struck Johnston one or more times with the hatchet. McKenzie removed Johnston's wallet from his pocket, placed the hatchet on top of a bucket inside the shed, and re-entered the residence. McKenzie observed that Peacock was struggling to stand up, so he grabbed a knife and stabbed Peacock multiple times. McKenzie then placed the knife in the sink, took Peacock's wallet and car keys, and departed in Peacock's vehicle.

An autopsy conducted on Randy Peacock revealed that the cause of his death was six stab wounds which caused extensive bleeding, with a contributory cause of blunt-force trauma to the head. The stab wounds suffered by Peacock were consistent with the knife found in the kitchen sink and the blunt-force trauma was consistent with the hammer side of the hatchet that was recovered from the shed. An autopsy conducted on Charles Johnston revealed that the cause of his death was extensive head trauma due to the infliction of four "chop" wounds. The trauma to Johnston's skull was consistent with the blade side of the hatchet that was recovered from the shed.

During a pretrial hearing, McKenzie expressed frustration with his court-appointed counsel because his right to a speedy trial had been waived without first consulting with him. When defense counsel sought a continuance on the basis that more time was needed to prepare for trial, McKenzie objected. McKenzie insisted that he was ready and wanted to proceed as expeditiously as possible. As a result, defense counsel moved to withdraw. The trial court, based upon McKenzie's assertion that he was ready to proceed, denied the motion and scheduled a trial date.

During a second pretrial hearing, defense counsel again moved for a continuance, asserting that additional time was necessary to prepare for trial and to investigate mitigation. McKenzie again expressed frustration with his court-appointed counsel, stating that they had requested his medical records even though he had specifically advised them that he did not want this action taken. When the trial court recommended that McKenzie listen to his attorneys' assertion that more time was required to properly prepare for trial, McKenzie responded that he did not need the assistance of counsel. Based upon this statement, the trial court scheduled a *Faretta* [*v. California,* 422 U.S. 806 (1975)] inquiry.

During the *Faretta* hearing, when asked by the trial court why he wanted to represent himself, McKenzie replied that he was ready for trial and did not need attorneys to prepare any sort of mitigation on his behalf. McKenzie also expressed the belief that he possessed sufficient intelligence to represent himself. With regard to his desire to proceed to trial as quickly as possible, McKenzie stated that he did not wish to subject his mother, his fiancée, or the victims' families to an extended trial, and that he thought a protracted trial would be a waste of taxpayer funds.

When the trial court asked McKenzie why he wanted to discharge his court-appointed counsel, McKenzie replied that they insisted upon taking actions with which he disagreed. Defense counsel agreed that McKenzie's displeasure with them arose from a difference of opinion with regard to trial strategy. After conducting a *Faretta* inquiry, the trial court concluded that McKenzie was competent to waive counsel and that his waiver was knowing, intelligent, and voluntary. The trial court allowed McKenzie to represent himself but appointed standby counsel with McKenzie's approval.

During the guilt phase of the trial, McKenzie admitted that he went to the victims' home on October 4 with the intention of taking their money. McKenzie also admitted that he hit both Johnston and Peacock with the hatchet and stabbed Peacock with a knife. After the State rested its case, McKenzie stated that he would not offer any witness testimony and further declined to testify on his own behalf. On August 21, 2007, the jury found McKenzie guilty of two counts of first-degree murder.

*McKenzie v. State*, 29 So. 3d 272, 275-77 (Fla. 2010) (footnote omitted).

## Initial Penalty Phase

During the initial penalty phase, the jury recommended by votes of ten to two that McKenzie be sentenced to death for both murders. *Id.* at 277. Following a *Spencer*[1] hearing, the trial court sentenced McKenzie to death for the murders.[2]

## Direct Appeal and Postconviction

This Court affirmed McKenzie's convictions and sentences on direct appeal. *Id.* at 288. On postconviction, this Court affirmed

---

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

2. The trial court sentenced McKenzie to death, having found the following aggravating factors:

> (1) McKenzie had previously been convicted of another capital felony or of a felony involving the use or threat of violence to the person, *see* § 921.141(5)(b), Fla. Stat. (2006) (eight prior convictions and the contemporaneous murder of the other victim) (great weight); (2) the murders were committed while McKenzie was engaged in the commission of a robbery, *see* § 921.141(5)(d) (significant weight); (3) the murders were committed for pecuniary gain, *see* § 921.141(5)(f) (merged with robbery aggravator—no additional weight given); and (4) the murders were cold, calculated, and premeditated (CCP), *see* § 921.141(5)(i) (great weight).

29 So. 3d at 278. The trial court found no statutory mitigating circumstances but found seven nonstatutory mitigating circumstances. *Id.*

the denial of postconviction relief under Florida Rule of Criminal Procedure 3.851, and it denied habeas relief. *See McKenzie v. State*, 153 So. 3d 867, 885 (Fla. 2014). However, McKenzie filed a successive motion for postconviction relief after this Court's decision in *Hurst v. State*, and the circuit court granted McKenzie a new penalty phase.

**Second Penalty Phase**

McKenzie's second penalty phase was tried before a new jury in August 2019. The State and the defense each presented evidence, following which the jury unanimously found—as to each murder—that the State established the existence of five proposed aggravating factors beyond a reasonable doubt: (1) McKenzie was previously convicted of a capital felony or a felony involving the use or threat of violence to a person (based on the contemporaneous murders of Johnston and Peacock, and also based on eight prior violent felony convictions); (2) the first-degree murder was committed while McKenzie was engaged in the commission of a robbery; (3) the first-degree murder was committed for financial gain; (4) the first-degree murder was especially heinous, atrocious, or cruel (HAC); and (5) the first-degree murder was committed in a

cold, calculated, and premeditated manner, without any pretense of moral or legal justification (CCP).

The jury also unanimously found that the aggravating factors were sufficient to warrant a sentence of death. One or more jurors found that one or more mitigating circumstances was established by the greater weight of the evidence, and the jury unanimously found that the aggravators outweighed the mitigating circumstances. The jury unanimously found that McKenzie should be sentenced to death for each murder.

The trial court later conducted a *Spencer* hearing and a sentencing hearing. In its sentencing order, the court found that all five aggravating factors were proven beyond a reasonable doubt as to each murder. The court assigned weight to each aggravating factor as follows: (1) McKenzie was previously convicted of a capital felony or a felony involving the use or threat of violence to a person—based on the contemporaneous murders of Johnston and Peacock, and also based on eight prior violent felony convictions (very great weight); (2) the first-degree murder was committed while McKenzie was engaged in the commission of a robbery (great weight); (3) the first-degree murder was committed for financial gain

- 8 -

(merged with murder during commission of a robbery; no additional weight); (4) HAC (great weight); and (5) CCP (great weight).

The trial court also found the following statutory mitigating circumstances as to each murder: (1) the murder was committed while McKenzie was under the influence of extreme mental or emotional disturbance (moderate weight); and (2) McKenzie's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired (slight weight).

As to nonstatutory mitigating circumstances, the trial court found as follows: (1) McKenzie's childhood was chaotic (slight weight); (2) McKenzie and his siblings were inadequately supervised after their parents' divorce (very slight weight); (3) McKenzie began huffing inhalants at the age of eleven (slight weight); (4) McKenzie had an early and chronic abuse and dependency on alcohol and drugs (slight weight); (5) McKenzie had a cocaine dependency relapse starting in July 2006 that continued up to the time of and after the murders (slight weight); (6) McKenzie consistently used a voluminous amount of cocaine from July to October of 2006 (slight weight); (7) McKenzie cooperated with law enforcement at the time of his arrest (slight weight); (8) McKenzie admitted to the murders

- 9 -

(moderate weight); (9) McKenzie has artistic ability (slight weight); (10) McKenzie was a construction assistant superintendent before the murders and had a key role in the construction of a shopping center (slight weight); (11) McKenzie impacted the life of his wife/fiancée in a positive way while in prison (slight weight); and (12) the prior sentencing jury did not unanimously recommend that McKenzie be sentenced to death (not a mitigating circumstance; no weight).

McKenzie now appeals both sentences of death and raises six issues.

## ANALYSIS

### I. Interrogatory Penalty Phase Verdict

Before trial, defense counsel filed a motion for an interrogatory penalty phase verdict that would have required the jury to identify the facts on which it relied to find any aggravating factors. In particular, the motion stated:

> A separate provision requiring the jury to state the facts upon which the factor is found allows the trial court and the appellate court to determine whether the jury's recommendation conforms with applicable law. Thus, the verdict form should contain an inquiry asking, for each aggravating circumstance found, the factual basis

for that finding, so that the inquiry would read substantially as follows:

> "Our finding that the homicide was committed in an especially heinous, atrocious or cruel manner" is based on the following facts: (specify)—

The trial court denied the motion and instructed the jury using the standard jury instructions.

McKenzie's argument that the jury was required to specify the facts supporting its findings of aggravating factors is without merit. The required jury finding for death eligibility is the unanimous finding of the existence of one or more aggravating factors proven beyond a reasonable doubt, not the individual facts on which the jury relied to find each aggravating factor. *See Poole*, 297 So. 3d at 502. As detailed in the verdict forms, McKenzie's jury unanimously found that each of five aggravating factors was proven beyond a reasonable doubt.

## II. Notice of Aggravating Factors

McKenzie also argues that the State should not have been able to amend its notice of aggravating factors in 2019 to include HAC. During the original penalty phase, the State sought to prove four aggravating factors as to each murder: (1) McKenzie was previously

convicted of a capital felony or a felony involving the use or threat of violence to a person; (2) the murders were committed while McKenzie was engaged in the commission of a robbery; (3) the murders were committed for pecuniary gain; and (4) CCP. *See McKenzie*, 29 So. 3d at 278.

In August 2017, the State filed a notice indicating that it intended to prove the same aggravating factors during the new penalty phase. However, in January 2019, the State filed a motion to amend its notice for the purpose of adding HAC as a fifth aggravating factor. Defense counsel filed a motion to strike the amended notice, and following a hearing, the trial court denied McKenzie's motion to strike and granted the State's motion to amend the notice. The court based its ruling on the grounds that section 782.04(1)(b), Florida Statutes (2016), and rule 3.181 ("Notice to Seek Death Penalty"), did not apply to McKenzie because he was arraigned in 2011—before the statute and the rule were enacted in 2016. The court did not err in permitting the State to amend the notice to include HAC.

After the United States Supreme Court held Florida's death penalty sentencing scheme unconstitutional in *Hurst v. Florida,* 577

U.S. 92, 102-03 (2016), the Florida Legislature amended section

782.04(1)(b) as follows (underlining indicates the added language):

> (b) In all cases under this section, the procedure set forth in s. 921.141 shall be followed in order to determine sentence of death or life imprisonment. <u>If the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant and file the notice with the court within 45 days after arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.</u>

Ch. 2016-13, § 2, Laws of Fla. The effective date of the statute was

March 7, 2016. *See* ch. 2016-13, § 7, Laws of Fla.

Also, in 2016, this Court adopted Florida Rule of Criminal

Procedure 3.181, which similarly provides:

> In a prosecution for a capital offense, if the prosecutor intends to seek the death penalty, the prosecutor must give notice to the defendant of the state's intent to seek the death penalty. The notice must be filed with the court within 45 days of arraignment. The notice must contain a list of the aggravating factors the state intends to prove and has reason to believe it can prove beyond a reasonable doubt. The court may allow the prosecutor to amend the notice upon a showing of good cause.

McKenzie maintains that the requirements of section

782.04(1)(b) and rule 3.181 apply to his new penalty phase and that

in the absence of a showing of good cause, the trial court erred in

permitting the State in 2019 to amend its notice to include HAC. He argues that the State lacked good cause to amend its notice because the facts on which the State relied to prove HAC were available at the time of the original trial in 2007.

We reject McKenzie's argument. Prior to 2016, the State was not required to provide notice of the aggravating factors it intended to prove, and we agree with the State that "[t]he mere fact that the State gave notice of aggravation does not render it bound by the new statute or rule." As we explained in *Bargo v. State*, 46 Fla. L. Weekly S199, S200 (Fla. June 24, 2021): "[N]othing in the 2016 legislation evinces any intent to apply to cases in which a defendant was arraigned—or waived arraignment—years before the amendment took effect."

### III. Victim Impact Evidence

Before the presentation of penalty phase evidence, the trial court addressed defense motions to exclude the introduction of victim impact evidence, and alternatively, to admit victim impact evidence in the judge's presence alone. The court denied the motions, and the State presented three victim impact statements: two statements from Peacock's siblings, and a statement from

Johnston's daughter.  Before each statement was introduced, the trial court instructed the jury that victim impact evidence was not to be used for finding aggravation and was not to be considered as an aggravating factor.

The trial court was not required to exclude victim impact evidence nor to receive it outside of the jury's presence.  "Evidence of a family member's grief and suffering due to the loss of the victim is evidence of 'the resultant loss to the community's members by the victim's death' permitted by section 921.141(7), and the admission of such evidence is consistent with the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)."  *Victorino v. State*, 127 So. 3d 478, 496 (Fla. 2013).[3]  Each of the victim impact statements in this case remained within the scope of proper victim impact evidence, and the trial court did not err in permitting their introduction.

---

3.  Victim impact evidence is now provided for in section 921.141(8), Florida Statutes (2020).

## IV. Sufficiency of Aggravating Factors

McKenzie argues that his death sentence is invalid because the jury did not find beyond a reasonable doubt that the aggravating factors were sufficient to impose the death penalty. He contends that for a death sentence to be valid, the jury must find beyond a reasonable doubt that the aggravating factors were sufficient to impose the death penalty and that the aggravating factors outweighed the mitigating circumstances. However, these jury determinations are "not subject to the beyond a reasonable doubt standard of proof." *Newberry v. State*, 288 So. 3d 1040, 1047 (Fla. 2019); *see also Craft v. State*, 312 So. 3d 45, 57 (Fla. 2020); *Rogers v. State*, 285 So. 3d 872, 885-86 (Fla. 2019). We decline McKenzie's invitation to revisit what has been settled: only the *existence* of a statutory aggravating factor must be found beyond a reasonable doubt. *See Poole*, 297 So. 3d at 505. *See also McKinney v. Arizona*, 140 S. Ct. 702, 707-08 (2020).

McKenzie also argues that the term "sufficient" requires a qualitative, not a numerical definition, and that the failure to define "sufficient" for the jury constituted fundamental error. However, we expressly rejected the qualitative versus numerical argument in

*Poole*: "Poole's suggestion that 'sufficient' implies a qualitative assessment of the aggravator—as opposed simply to finding that an aggravator exists—is unpersuasive and contrary to this [Court's] decades-old precedent."  *Poole*, 297 So. 3d at 502.

## V. *Hurst v. State*

McKenzie contends that this Court's analysis of jury sentencing in *Hurst v. State* established substantive law that required his jury to find certain "elements" beyond a reasonable doubt.  This Court has soundly rejected McKenzie's "elements" argument and has explained that *Hurst v. State* jury sentencing determinations are not "elements" that must be found beyond a reasonable doubt.  *See Poole*, 297 So. 3d at 505.

Moreover, to the extent that McKenzie argues that the *Hurst v. State* jury sentencing determinations constitute elements of a purported greater offense of capital first-degree murder, we have also rejected this argument:

> As we explained in *Foster*, there is no independent crime of "capital first-degree murder"; the crime of first-degree murder is, by definition, a capital crime, and *Hurst v. State* did not change the elements of that crime.  *Id.* at 1251-52 (holding that when a jury makes *Hurst* determinations, "it only does so *after* a jury has

- 17 -

unanimously convicted the defendant of the capital crime of first-degree murder").

*Wright v. State*, 312 So. 3d 59, 60 (Fla. 2021) (quoting *Foster v. State*, 258 So. 3d 1248, 1251 (Fla. 2018)).

## VI. Constitutionality of the Prior Violent Felony Aggravating Factor

McKenzie challenges the constitutionality of the prior violent felony aggravating factor, as set forth in section 921.141(6)(b), Florida Statutes. As the State argues and McKenzie concedes, this Court has repeatedly rejected this claim. *See Gonzalez v. State*, 136 So. 3d 1125, 1169 (Fla. 2014) ("[W]e have rejected claims that the prior violent felony and HAC aggravators are vague and overbroad."); *Farina v. State*, 937 So. 2d 612, 618 n.5 (Fla. 2006) (rejecting as meritless a claim that counsel was ineffective for failing to challenge the prior violent felony aggravating factor on vagueness and overbreadth grounds).

## CONCLUSION

For these reasons, we affirm McKenzie's sentences of death.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

For the reasons expressed in my dissenting opinion in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020) (receding from proportionality review requirement in death penalty direct appeal cases), I can only concur in the result.

An Appeal from the Circuit Court in and for St. Johns County,
    Howard M. Maltz, Judge
    Case No. 552006CF001864XXAXMX

Jeffrey D. Deen, Regional Counsel, and Michael P. Reiter, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fifth District, Ocala, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Doris Meacham, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee